994 So.2d 239 (2008)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant/Cross-Appellee,
v.
Mary CARD, Appellee/Cross-Appellant.
No. 2007-SA-00109-COA.
Court of Appeals of Mississippi.
June 3, 2008.
Rehearing Denied September 16, 2008.
Certiorari Denied November 6, 2008.
*240 Mary Margaret Bowers, attorney for appellant.
George S. Luter, attorney for appellee.
Before MYERS, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Mary Card applied for hurt-on-the-job disability retirement benefits from the Public Employees' Retirement System ("PERS"), pursuant to Mississippi Code Annotated section 25-11-114(6) (Rev.2006). The Disability Appeals Committee ("Committee") recommended that her application be denied. The Committee also denied Card regular disability under Mississippi Code Annotated section 25-11-113(1)(a) (Rev.2006). The PERS Board of Trustees ("Board") adopted the Committee's recommendation and denied Card's claim. Card appealed the decision of the Board to the Circuit Court of Hinds County. The circuit court affirmed the Board's denial of hurt-on-the job benefits, but reversed the Board's denial of regular disability benefits.
¶ 2. PERS now appeals, claiming that the circuit court erred in awarding regular disability benefits under section 25-11-113(1)(a). PERS argues the circuit court improperly reweighed the evidence and substituted its judgment for that of the Board by finding that the Board's decision was not supported by substantial evidence. Card contends that the Board's denial of regular disability benefits is not supported by substantial evidence and was arbitrary and capricious.
¶ 3. Card filed a cross-appeal claiming that the circuit court erred in affirming the Board's decision to deny her hurt-on-the-job disability benefits under section 25-11-114(6). Card argues that the Board's decision was not supported by substantial evidence.
¶ 4. Finding error, we reverse and render in part and reverse and remand in part. As to Card's cross-appeal, we affirm the circuit court's ruling that Card is not *241 entitled to hurt-on-the-job benefits under section 25-11-114(6).

FACTS
¶ 5. Card was an accounting assistant at the University of Mississippi for fifteen years. She did not report to work after August 30, 2002, when she began to experience severe pain from writing all day long. She went to the emergency room that same evening because of the pain and numbness in her right hand. Card has remained on unpaid leave from her job since August 30, 2002. On December 12, 2002, she filed her claim for disability with PERS. A hearing before the Committee, comprised of two physicians and one nurse, was held on November 17, 2003. The Committee heard testimony regarding Card's medical history and her present condition in order to determine whether she qualified for disability.
¶ 6. Card was diagnosed with carpal tunnel syndrome in 1998. The record shows that she experienced problems with both of her hands and began receiving treatment for pain in 2001. The following year, she had carpal tunnel surgery on both hands. She improved with physical therapy, but the pain returned after the therapy was discontinued by her doctor.
¶ 7. Dr. Ernest B. Lowe, Jr., who performed Card's carpal-tunnel-release surgery, stated that Card could return to work at light duty with no repetitive wrist motion, but he also concluded that she could not return to her former job.
¶ 8. Dr. Cooper Terry, an orthopedist, performed an independent evaluation of Card's wrists. He noted that Card showed guarding of her wrists, but she had full range of motion and no signs of bruising or warmth. Dr. Terry also concluded that Card's subjective complaints of pain and numbness were fairly impressive. However, it was his opinion that Card was capable of returning to her former job because there were no objective findings that would prevent her from performing that type of work.
¶ 9. On March 31, 2003, after Card's last day of work, but before her hearing before the Committee, Card had heart bypass surgery that caused her vocal cords to become temporarily paralyzed. In a letter date October 22, 2003, her doctor recommended that she only use her voice for two hours per day for at least the next six months. This limitation prohibited her employer from transferring her to a receptionist job, which would have accommodated her problems associated with carpal tunnel syndrome.
¶ 10. Card was given a Functional Capacity Evaluation ("FCE") on July 22, 2003. She testified that she had trouble lifting with her hands and difficulty crawling on her hands and knees. She was self-limiting in 52% of the tasks; however, despite her self-limiting behavior, she was able to perform twelve of the fourteen physical requirements of her employer. The tester determined that Card could return to sedentary employment.
¶ 11. A Vocational Rehabilitation Evaluation ("VRE") was also performed on October 24, 2003. It concluded that Card sustained a 100% loss of access to the labor market. The test found that she had no transferable skills. The Committee attributed this result to the temporary restriction on the use of her voice.
¶ 12. Based on the recommendation of the Committee, Card's claim for disability benefits was denied by the Board. As to hurt-on-the-job disability, PERS found that Card had not met her burden of proving that an accident or trauma caused her alleged disability. Card was also denied regular disability because the Board found that complaints of pain alone were insufficient *242 to substantiate a disability. There was no objective evidence of carpal tunnel sufficiently significant to warrant permanent disability. The Board did not take into consideration the injury to her vocal cords because it occurred well after her last day of work.
¶ 13. The circuit court upheld the Board's decision as to hurt-on-the-job disability, but the court overturned the denial of regular disability benefits. PERS now appeals that portion of the circuit court's order granting regular disability benefits to Card. On cross-appeal, Card seeks reversal of the circuit court's order affirming the denial of hurt-on-the-job benefits.

STANDARD OF REVIEW
¶ 14. Judicial review of an administrative agency's decision is severely limited. As long as the reviewing court finds that the Board's decision was supported by evidence and absent of fraud, it shall render the Board's decision conclusive. Shannon Eng'g & Constr. v. Employment Sec. Comm'n, 549 So.2d 446, 449 (Miss.1989). Moreover, a court may only overturn the Board's decision if it was (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the agency's authority to make, or (4) in violation of a statutory or constitutional right of the applicant. Pub. Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018(¶ 13) (Miss.2003); Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 891(¶ 8) (Miss. 2001).
¶ 15. "There is a rebuttable presumption in favor of a PERS ruling. Neither [the appellate court] nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case." Dishmon, 797 So.2d at 891(¶ 9) (citations omitted). When reviewing an administrative agency's decision, the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence. Miss. State Bd. of Exam'rs for Social Workers & Marriage and Family Therapists v. Anderson, 757 So.2d 1079, 1084(¶ 15) (Miss.Ct.App.2000).

ANALYSIS

1. Regular Disability

a. Whether substantial evidence exists to support the Board's denial of regular disability benefits for Card's carpal tunnel syndrome.
¶ 16. PERS argues that the circuit court erred by granting Card regular disability benefits under Mississippi Code Annotated section 25-11-113(1)(a). Specifically, it claims that the circuit court reweighed the evidence and substituted its judgment for that of the Board's, and such action by the circuit court was in error because the Board's decision was based on substantial evidence and was neither arbitrary nor capricious.
¶ 17. Section 25-11-113(1)(a) provides regular disability benefits to employees who have worked in state service for at least four years and who are found to be disabled as defined by the statute. Card had more than four years of service; thus, the question before the Board was whether Card was in fact disabled, and therefore, eligible to receive regular disability benefits. "Disability" is defined as:
the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System that is actually offered and is within *243 the same general territorial work area, without material reduction in compensation.
Miss.Code Ann. § 25-11-113(1)(a) (citations omitted). For Card to obtain disability benefits, she must establish that she meets this definition of "disabled." Dishmon, 797 So.2d at 893(¶ 15).
¶ 18. The Board adopted the Committee's ruling that Card did not meet her burden of proving permanent disability. After reviewing the medical records and testimony, the Committee concluded that "according to the record ... Ms. Card's actual carpal tunnel condition is `mild.' Secondly, it is obvious that Ms. Card complains of pain and numbness in her wrists, but especially her right wrist, yet pain alone can not [sic] by itself substantiate disability."
¶ 19. The Committee then analyzed the evidence presented by the two doctors who examined Card. Dr. Lowe concluded that Card could not return to her former job. However, the Committee found that he "failed to document any physical findings to support Ms. Card's complaints. He only documents her complaints. There are no notations of temperature difference, swelling, redness or the like, only the subjective complaints of pain." Dr. Terry, the independent examiner, found that, even though Card's subjective complaints of pain and numbness were fairly impressive, he knew of no reason why she could not return to her former job as an accounting assistant.
¶ 20. The Committee specifically stated that it regarded Dr. Terry's findings as more persuasive than Dr. Lowe's, stating that:
Dr. Terry, while only the independent examiner, is more persuasive because he notes that he can find nothing objective to support Ms. Card's complaints of pain and numbness. It is clear that he has looked at her hands and we are not sure of that with Dr. Lowe. And again, the nerve conduction study showed only mild carpal tunnel, and certainly that level of carpal tunnel should not result in the significant amount of pain that Ms. Card alleges.
Based on Dr. Terry's assessment, which included Card's self-limiting behavior in the FCE and the fact that she told the examiner that she had no intention of returning to work, the Board found that Card was not permanently disabled.
¶ 21. The circuit court reversed this decision and granted regular disability benefits to Card. The circuit court found that the Board's decision was not supported by substantial evidence. After reviewing the record, the circuit court ruled that Card was disabled under section 25-11-113(1)(a). This ruling was primarily based upon the impairment ratings assigned to Card by the two doctors. Dr. Lowe gave her a permanent impairment rating of 20% to each hand. Dr. Terry gave her an impairment rating of 5% in the left hand and 10% in the right hand.
¶ 22. The question before us on appeal is whether the Board's decision is supported by substantial evidence. Substantial evidence "means something more than a scintilla of evidence," or "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Delta CMI v. Speck, 586 So.2d 768, 773 (Miss. 1991). The Board heard evidence from two opposing doctors in this case. Both doctors assigned permanent impairment ratings to each of Card's hands. Dr. Lowe determined that Card could not return to work, and Dr. Terry found that Card was able to work. However, the Board found Dr. Terry's findings to be more reliable, and thus, the Board concluded that Card was not permanently disabled and could return to her former job.
*244 ¶ 23. The Board, through its medical doctors, was in a far better position to evaluate whether Card's subjective complaints of pain amounted to a disability under section 25-11-113(1)(a). We find that the circuit court improperly reweighed the medical evidence in this case when it relied on the impairment rating to find that Card was disabled. There was substantial evidence to support the Board's decision; thus, the circuit court erred by reversing the Board's decision and granting regular disability benefits to Card. We reverse the judgment of the circuit court and render judgment to reinstate the Board's denial of regular disability benefits for Card's carpal tunnel condition.

b. Whether the Board's decision was arbitrary and capricious because the Board excluded the evidence of Card's vocal impairment from its decision regarding whether Card was entitled to regular disability benefits.
¶ 24. Card argues that the Board's decision was arbitrary and capricious because the Board chose not to include evidence of Card's vocal impairment in its decision of whether Card was disabled. In response, PERS claims that it has the duty to determine which physicians' assessments and other evidence it should rely on in determining whether a claimant is permanently disabled.
¶ 25. At the hearing before the Committee on November 17, 2003, Card testified that her vocal cords became paralyzed during her heart bypass surgery. Card's physician determined that her voice status would not be stable for at least six months from October 22, 2003, and limited the use of her voice to two hours per day during that period of time. The Committee found that:
the condition of Ms. Card's subclavian artery and vocal cords were fine on her last day of work and she did not sustain any problem with them until well after her last day of work. Thus, those problems are not to be taken into consideration with regard to disability in this forum as they did not result in her termination and are certainly not duty related.
With regard to regular disability, the Board based its decision solely on Card's problems associated with carpal tunnel syndrome.
¶ 26. Had the Committee only addressed whether Card was entitled to hurt-on-the-job disability benefits, it would have been correct in excluding the evidence of Card's vocal paralysis as her heart surgery occurred after her last day of work. However, section 25-11-113(1)(a) regarding regular disability has no requirement that the injury occur while the employee is working. All that is required under the statute is that the claimant be an:
active member in state service who has at least four (4) years of membership service credit [and] the medical board, after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.
Miss.Code Ann. § 25-11-113(1)(a).
¶ 27. Card claims that she was still an active member of PERS at the time of her vocal cord injury because she remained an employee of the University on leave without pay. Termination of PERS membership is governed by Mississippi Code Annotated section 25-11-105, which says that "[m]embership in this system shall cease *245 by a member withdrawing his accumulated contributions, or by a member withdrawing from active service with a retirement allowance, or by a member's death." At the time of the hearing before the Committee, Card had not met any of these requirements for termination.
¶ 28. Further, the PERS regulation regarding the effective date of benefits discusses the status of an employee who is on leave without pay as follows:
termination from covered service shall mean the cessation of the employee-employer relationship as characterized by resignation or termination from employment, with or without cause. While a member may not be performing the duties of the job, if the member has not resigned or been terminated by the employer, the member is still considered employed.... In cases where the member is on authorized leave without pay... such member is considered an employee of the agency....
PERS Board Regulation 45A(103)(2) (2007). While on leave without pay, Card remained a member of PERS; thus, the Committee erred by not considering Card's vocal cord impairment.
¶ 29. It was the duty of PERS to determine whether Card was "physically incapacitated for the further performance of duty, [and] that the incapacity [was] likely to be permanent...." Miss.Code Ann. § 25-11-113(1)(a) (emphasis added). By improperly disregarding any evidence of Card's vocal cord impairment, the Committee failed to determine whether that impairment constitutes a permanent disability for which Card is entitled to regular disability benefits. We find that the Committee erred by excluding evidence of Card's vocal cord impairment merely because the impairment occurred after her last day of work. Accordingly, we reverse the judgment of the circuit court and remand this case to the Hinds County Circuit Court with instruction to remand to the PERS Disability Appeals Committee to consider whether Card's vocal cord impairment is a permanent disability that would entitle Card to an award of regular disability benefits.

2. Hurt-on-the-job Disability
¶ 30. On cross-appeal, Card claims that the circuit court erred by affirming the Board's denial of hurt-on-the-job benefits under Mississippi Code Annotated section 25-11-114(6). She claims that the Board's decision is not supported by substantial evidence.
¶ 31. Section 25-11-114(6) provides disability benefits for "any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty," regardless of the number of years of service. Card had the burden to show that she qualified for this type of disability. Dishmon, 797 So.2d at 893(¶ 15). The Committee found that she did not meet this burden, stating:
Ms. Card has the burden of persuading this Committee that she has suffered an accident or trauma that has caused the alleged disability and that disability has resulted in a permanent occupational disability.... There is no testimony of an accident or trauma as required by the statute and interpreted by the Attorney General'[s] office. Ms. Card's counsel pleads the micro trauma theory, but that theory has never been adopted by PERS.
¶ 32. We find that Card did not present the evidence required to prove that her carpal tunnel was caused by an accident or traumatic event. In fact, section 25-11-114(6) states that "[p]ermanent and total *246 disability resulting from a cardiovascular, pulmonary or musculo-skeletal condition that was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability." Miss.Code Ann. § 25-11-114(6). The Mississippi Office of the Attorney General has interpreted the term "traumatic event" as:
an event in which a worker involuntarily meets with a physical object or some other external matter and the worker is a victim of a great rush of power that he himself did not bring into motion. This definition was held not to include physical injuries resulting from a slip and fall accident and physical conditions resulting from an excessive work effort.

Op. Att'y Gen. Walker (Mar. 16, 1994) (emphasis added). Card provided no evidence of a disability resulting from an accident or traumatic event. Instead, the evidence shows that she consistently experienced problems with carpal tunnel as far back as 1998.
¶ 33. Her lack of evidence presented to PERS creates the substantial evidence necessary for this Court to uphold the Board's decision. As we stated in Public Employees' Retirement System v. Cobb, 839 So.2d 605, 609-10(¶ 16) (Miss.Ct.App. 2003), "in something of a paradox, the lack of evidence at the agency level becomes the substantial evidence on appellate review that suggests the necessity of affirming the agency's determination." We find that the record supports the Board's finding that Card failed to show a disability resulting from an accident or traumatic event; therefore, the circuit court was correct in affirming the denial of hurt-on-the-job benefits. Accordingly, this issue has no merit and the decision of the circuit court as to hurt-on-the-job disability benefits is affirmed on cross-appeal.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL AND AFFIRMED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND THE APPELLEE/CROSS-APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.