ROBERTS, J.,
for the Court.
¶ 1. This opinion represents the consolidation of three separate appeals that arose from the same nucleus of operative facts.[1] *222 Albert “Butch” Lee worked as an instructor at the Mississippi Fire Academy for more than twenty-one years. On November 5, 2004, Lee injured his back while he was on the job and preparing a training scenario for fire academy candidates. Specifically, Lee was lifting a 160 to 170 pound training dummy from the back of a vehicle. When Lee turned to drop the training dummy into a hole, he felt a sudden sharp and “excruciating” pain that went from his “shoulder blades, all the way down through [his] groin [and] into [his] legs.”
¶2. Lee initially believed his pain was related to other problems. After eliminating other potential causes of his pain, Lee was referred to Dr. Bruce Senter, an orthopedic surgeon. Lee first saw Dr. Sen-ter on December 21, 2004. Dr. Senter’s notes indicate Lee had been suffering from significant back pain since lifting a training dummy. Dr. Senter’s notes also state that Lee had also suffered from long-term chronic low-back pain prior to his training-dummy injury. Dr. Senter ordered x-rays on Lee’s back. According to Dr. Senter, Lee’s x-rays indicated that Lee had grade I L4 and L5 spondylolisthesis — a condition in which a bone in the lower part of the spine slips out of the proper position onto the bone below it — with marked degenerative disc disease. Dr. Senter then ordered a magnetic resonance image (MRI) of Lee’s back and released Lee to continue to work pending the results of the MRI. According to Dr. Senter, the MRI of Lee’s back confirmed Dr. Senter’s diagnosis of spondylolisthesis. Dr. Senter later explained that Lee had “not only a bulging disk or ruptured disk, but in essence a dead disk.”
¶ 8. Lee got a second opinion from Dr. Collum.[2] Lee did not introduce Dr. Col-lum’s medical records into evidence. Even so, Dr. Senter’s notes reflect that Dr. Col-lum recommended treating Lee’s pain with nerve blocks. According to Dr. Senter, Dr. Collum further recommended that Lee undergo spinal fusion surgery if nerve blocks did not successfully treat Lee’s pain.
¶ 4. During March 2005, Dr. Senter performed an anterior and posterior spinal fusion on Lee’s spine. Approximately six months later, Dr. Senter released Lee to return to work with a fifty-pound lifting restriction. Lee returned to Dr. Senter approximately one month later. As a result of that appointment, Dr. Senter assigned Lee a forty-five-pound lifting restriction and told Lee to find a different line of work. Dr. Senter eventually noted that in his opinion, Lee had a congenital condition that is usually asymptomatic that was made symptomatic by the October 2004 training dummy injury.
¶ 5. Lee sought disability benefits from the Public Employees’ Retirement System (PERS). The PERS Medical Board determined that Lee was eligible to receive regular disability benefits. However, the Medical Board also determined that Lee was not eligible to receive “duty-related” disability benefits. Lee appealed the Medical Board’s decision to the PERS Disability Appeals Committee (DAC).
¶ 6. During a hearing before the DAC, Lee testified that he had experienced back pain before the training-dummy incident. According to Lee, during 1992 and 1993, he experienced back pain that was masked by other problems. Lee further explained that although he suffered back pain during that time, the pain did not limit his activi *223 ties. He elaborated that sitting for long periods of time caused him great pain.
¶ 7. Lee’s medical records indicated he visited MEA Medical Climes in 1993 due to his back pain. Notes within his records stated that Lee reported having back pain for one and one half to two years. Additionally, Lee testified that in 1994 — approximately ten years before the 2004 event — he had fallen from a height of twelve to sixteen feet. Lee further testified that he visited a MEA Medical Clinic in 1999 because he was suffering from a number of complaints, including lower back pain. Lee also admitted that he visited a physician in July 2004 with complaints of lower back pain.
¶ 8. The DAC found Lee suffered from a pre-existing congenital problem. According to the DAC, the training-dummy incident merely aggravated Lee’s pre-existing condition. The DAC found that Lee’s injury did not qualify as a “traumatic event.” Consequently, the DAC recommended that the Board of Trustees (the Board) approve Lee’s request for regular disability benefits and deny Lee’s request for duty-related disability benefits. The Board adopted the DAC’s recommendation.
¶ 9. Lee appealed to the Hinds County Circuit Court. The circuit court reversed the Board’s decision denying duty-related disability benefits. Aggrieved, PERS appeals. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 10. We conduct a limited review of an administrative agency’s findings and decisions. Pub. Employees’ Ret. Sys. v. Howard, 905 So.2d 1279, 1284 (¶ 18) (Miss.2005). “[A]n agency’s conclusions must remain undisturbed unless the agency’s order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one’s constitutional rights.” Id. “There is a re-buttable presumption in favor of a PERS ruling.” Pub. Employees’ Ret. Sys. v. Card, 994 So.2d 239, 242 (¶ 15) (Miss.Ct.App.2008). “Neither [the appellate court] nor the circuit court is entitled to substitute its own judgment' for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case.” Id. “When reviewing an administrative agency’s decision, the circuit court must look at the full record before it in deciding whether the agency’s findings were supported by substantial evidence.” Id.
ANALYSIS
¶ 11. PERS claims the circuit court erred when it awarded Lee duty-related disability benefits. Mississippi Code Annotated section 25 — 11—113(l)(a) (Rev.2010) provides:
[A]ny active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees ... provided that the medial board, after an evaluation of medical evidence ... shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired....
The Board found that Lee qualified for “regular” disability benefits. Even so, Lee appealed the Board’s decision that he did not qualify for duty-related disability benefits.[3] Duty-related disability benefits are discussed in Mississippi Code Annotated *224 section 25-11-114(6) (Rev.2010), which provides:
Regardless of the number of years of creditable service upon the application of a member ... any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty ... may be retired by the board of trustees.... The retirement allowance shall equal the allowance on disability retirement as provided in [s]ection 25-11-113 but shall not be less than fifty percent (50%) of average compensation.
As mentioned, the circuit court reversed the Board’s decision that Lee did not qualify for duty-related disability benefits. PERS claims the circuit court impermissi-bly re-weighed the evidence and substituted its judgment for the Board’s. We disagree.
¶ 12. To receive “duty-related” disability benefits, Lee was obligated to prove: (1) he was an active member; (2) he had become disabled; (3) his disability was a direct result of either an accident or a “traumatic event”; (4) the accident or “traumatic event” resulted in a physical injury; and (5) the physical injury occurred during the performance of a duty. Id. In this appeal, we must determine: (1) whether there was substantial evidence that Lee did not experience an accident or a traumatic event, and; (2) whether there was substantial evidence that Lee’s disability resulted from a musculo-skeletal condition that was a direct result of a traumatic event.
¶ 13. The Board adopted the DAC’s proposed findings of fact and conclusions of law without further comment. The DAC discussed the definition of the term “traumatic event,” but the DAC did not discuss the definition of the term “accident.” The DAC simply concluded that because Lee did not suffer a traumatic event, Lee did not injure his back as the result of an accident when he lifted the training dummy and turned to place it in a hole. The DAC did not discuss whether the action that produces the injury must be an accident, or whether it is sufficient that the outcome of the action is accidental.
¶ 14. No Mississippi statute or case has attempted to define the term “accident” in the context of eligibility for duty-related benefits. However, in Brinston v. PERS, 706 So.2d 258, 260 (¶ 8) (Miss.Ct.App. 1998), this Court referred to a claimant’s having been shoved against a wall as an “accident.” Additionally, in PERS v. Trulove, 954 So.2d 501, 504 (¶14) (Miss.Ct.App.2007), a claimant sought duty-related benefits after she felt a “pop” in her neck while she helped restrain a patient. We held that the claimant’s injuries were the direct result of an accident that occurred in the performance of a duty. Id. at 505 (¶ 16). Accordingly, one must be able to recover duty-related disability benefits if the outcome is accidental. It would be contrary to our decision in Trulove if it was the action that must be an accident.
¶ 15. As mentioned, the DAC simply concluded that there was no evidence that Lee was injured as the result of an accident. The DAC did not define the term or analyze the circumstances in light of the definition of the term. “Accident” has been defined as “an event which under the circumstances is unusual and unexpected by the person to whom it happens.” Black’s Law Dictionary 14 (5th ed. 1979). “The word may be employed as denoting a calamity, casualty, catastrophe, disaster, an undesirable or unfortunate happening.” Id. There is no evidence that Lee’s symptomatic spondylolisthesis was usual and expected. It was certainly an undesirable result. Consequently, there was not sub *225 stantial evidence to support the Board’s conclusion that Lee’s injury was not an “accident.”
¶ 16. Having found that there was not substantial evidence that Lee was not injured in an accident, it is not necessary to determine whether Lee was injured as a result of a “traumatic event.” It is enough that Lee was injured in an accident.
¶ 17. PERS notes that section 25-11-114(6) states “[pjermanent and total disability resulting from a ... musculo-skele-tal condition that was not the direct result of a traumatic event occurring in the performance of a duty shall be deemed an ordinary disability.” Stated differently, a claimant may not recover duty-related disability benefits when a disability results from a musculo-skeletal condition that did not directly result from a traumatic event that happened during the performance of a duty. The DAC did not define “musculo-skeletal condition” but it held that Lee’s spondylolisthesis precluded him from recovering duty-related benefits based on this provision.
¶ 18. In Trulove, 954 So.2d at 504 (¶ 14), a claimant recovered duty-related benefits after she sustained a herniated nucleus — sometimes referred to as a herniated disc — while attempting to restrain a patient. That claimant recovered duty-related benefits despite having had a prior “anterior cervical discectomy” surgery. Id. at 502 (¶ 4). This Court held that the claimant’s prior injury did not preclude recovery of duty-related benefits because the claimant’s injuries were the direct result of an accident that occurred in the performance of a duty. Id. at 505 (¶ 16).
¶ 19. The DAC’s conclusion that Lee was not entitled to duty-related benefits was based on Lee’s having previously having received treatment for lower back pain. However, none of those treatments for lower back pain were to alleviate Lee’s spondylolisthesis. Furthermore, there is no evidence that Lee’s spondylolisthesis had previously been symptomatic. The undisputed evidence is that Lee became symptomatic only after he lifted the training dummy. It is also undisputed that Lee was acting in the performance of a duty. Accordingly, there was not substantial evidence to support the DAC’s conclusion that Lee was not injured in an accident. Furthermore, there was not substantial evidence to support the DAC’s decision that Lee was not disabled as a direct result of Lee’s performance of a duty. Consequently, we find that the circuit court correctly reversed the Board’s decision. It follows that we affirm the judgment of the circuit court.
¶ 20. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. The three consolidated appeals followed our opinion in Public Employees' Retirement Service v. Lee, 23 So.3d 528 (Miss.Ct.App.2009). In that case, internally designated as 2008-SA-0627, we reversed the circuit court's decision to deny PERS's motion to file an out-of-tíme appeal of the circuit court's conclusion that Lee was entitled to duty-related benefits. Id. at 532 (¶ 11). For brevity's sake, it should suffice to say that PERS prematurely filed 2009-SA-1630. PERS subsequently filed the appeal setting this opinion into motion.

. The parties’ briefs refer to "Dr. Collum," but they do not specify this physician's first name. As best we can tell, the parties are referring to Dr. Thomas Cullom III, a neurosurgeon who practices in Flowood, Mississippi.

. According to the DAC’s proposed findings of fact and conclusions of law, Lee preferred to obtain duty-related disability benefits based on an unspecified tax benefit above regular disability benefits.