# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-00306-COA

**CARYL S. ULRICH**                                                                        **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                          **APPELLEE**

DATE OF JUDGMENT:                          02/01/2018
TRIAL JUDGE:                                       HON. TOMIE T. GREEN
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT,
                                                          FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          HENRY BERNARD ZUBER III
ATTORNEYS FOR APPELLEE:          JANE L. MAPP
                                                          SAMUEL MARTIN MILLETTE
NATURE OF THE CASE:                    CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                                   AFFIRMED: 04/02/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Caryl Ulrich applied for duty-related disability benefits from the Public Employees'
Retirement System of Mississippi ("PERS") in 2015. Ulrich claimed to have been injured
from an electrical shock while working at Pascagoula High School. The PERS Medical
Board ("the Board") denied her claim for disability benefits. The Board found that there was
"insufficient objective medical evidence to support the claim that [Ulrich's] medical
condition prevents [her] from performing the duties of a teacher." Furthermore, the Board
found that Ulrich failed to prove that her disability was related to a traumatic event that
occurred while teaching. The Board's decision was affirmed by both the PERS Disability

Appeals Committee ("Appeals Committee") and the Hinds County Circuit Court. She now appeals those decisions to this Court. We affirm the decision of the Board and the circuit court.

**FACTS**

¶2. Caryl Ulrich taught at Pascagoula High School for over seventeen years until she resigned in May 2015. A year before she retired, she claimed she was electrocuted while flipping a light switch off in class. Ulrich told the Board and the Appeals Committee that when she went to switch the light off, she heard a loud crackle or pop and saw a flash of fire or a spark. She then collapsed against the metal door frame, and a student brought her a chair to sit in until a nurse could come.

¶3. Ulrich went to MedWorks Clinic and received care from Dr. John Pessoney after the incident. She complained of pain on her left side and a headache. There is nothing to indicate she lost consciousness during the event. Ulrich was released without restriction by Dr. Pessoney.

¶4. Three days later, Ulrich returned to the MedWorks Clinic for a follow-up evaluation. Her headache had persisted, as well as the pain in her left arm and hand. Dr. Pessoney indicated that Ulrich should go see a neurologist. On that same day, Ulrich went to the emergency room and received a shot of Benadryl along with a dose of Hydrocodone.

¶5. Ulrich introduced evidence of a "burn" mark on her right hip. No such mark was documented on the date of the incident. Ulrich initially believed the marks were hives.

2

Ulrich testified at her hearing before the Committee that she showed her neurologist, Dr. Terrence Millette, the "burn" on her hip she believed to be an exit wound. Dr. Millette advised her to take a picture of the mark, but Ulrich testified to the Appeals Committee that she "didn't at that point," and it was not until six weeks later that she finally took the photo of her hip that showed the markings. Ulrich's testimony to the Appeals Committee indicated she believed the burns were a result of the electricity potentially exiting her body.

¶6.    Ulrich completed several different tests while in Dr. Millette's care, along with three separate cycles of physical therapy to correct her issues. Dr. Millette found that Ulrich suffered from "mild carpal tunnel syndrome" in her right wrist. He also gave Ulrich Botox injections in her neck for her pain caused by muscle spasms. The record shows that the residual testing that Ulrich completed came back consistently normal. Ulrich, however, continued to complain of pain in her left side, double vision, and dizziness with nausea. Her medical records do not indicate that she ever explored corrective lenses to fix her double vision, as was suggested by an Appeals Committee member at her hearing.

¶7.    It was not until a year after the incident that Ulrich filed for duty-based disability benefits through PERS. Ulrich had continued to work as a teacher, but claimed she suffered from pain on her left side, double vision, and nausea. At that point, she was already receiving workers' compensation benefits. Dr. Millette completed the PERS "Statement of Examining Physician" form, concluding that Ulrich was disabled due to pain in her left side. While Ulrich claimed that nausea and double vision were some of her biggest issues that kept

3

her from doing her work, Dr. Millette did not reference any of those issues in his statement.

¶8. Ulrich also consented to an independent evaluation by Dr. Angel Minster. Dr. Minster was given a copy of Ulrich's PERS file and performed her own history and examination. Dr. Minster did notice "trigger points" in her neck and left side, consistent with Dr. Millette's evaluation. Ulrich was asked to undergo a function capacity examination to determine if she was able to complete the tasks her job required. Based on the results of the function capacity examination, Dr. Minster concluded that Ulrich was not permanently disabled.

¶9. As a result of her medical records, the testimony heard at the hearing, and the function capacity examination, the Board denied her benefits. Pursuant to Mississippi Code Annotated section 25-11-120 (Rev. 2015), Ulrich disagreed with the Board's finding and appealed to the Appeals Committee. The Appeals Committee agreed with the Board and affirmed its decision to deny disability benefits. Ulrich then appealed the Appeals Committee's decision to the Hinds County Circuit Court. The circuit court affirmed the denial of disability benefits.

## STANDARD OF REVIEW

¶10. Any review of an administrative agency is limited by this Court. The conclusion of the agency withstands appellate review unless the order is: "(1) not supported by substantial evidence; (2) is arbitrary and capricious; (3) is beyond the scope or power granted to the agency; or (4) violates one's constitutional rights." *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶11) (Miss. 2000). A decision by PERS has a rebuttable presumption in

4

favor of its initial ruling. *Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶3) (Miss. Ct. App. 2008) (quoting *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 881, 891 (¶9) (Miss. 2001)). If the agency's decision is supported by substantial evidence, then the agency's decision stands. *Pub. Emps.' Ret. Sys. v. Walker*, 126 So. 3d 892, 895 (¶7) (Miss. 2013).

¶11. Substantial evidence has been defined by the supreme court as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Id*. (citing *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991)). In short, the evidence must be more than a "mere scintilla or suspicion." *Miss. Real Estate Comm'n v. Anding*, 732 So. 2d 192, 196 (¶13) (Miss. 1999).

**ANALYSIS**

¶12. A member can claim disability benefits from PERS in two scenarios, either of which, if proven, entitle the member to disability benefits. The first is for members who are vested and become disabled for any reason. Miss. Code Ann. § 25-11-113. The second is duty related disability benefits for any members, no matter how many years of credible service, that are injured in conjunction with their employment duty. Miss. Code Ann. § 25-11-114 (Supp. 2015). Disability is defined as the "inability to perform the usual duties of employment." Miss. Code Ann. § 25-11-113(1)(a).

¶13. Any member that claims they are in need of disability benefits has the burden to prove the following elements through sufficient evidence:

    1)    the claimant is mentally or physically incapacitated for the further performance of their duty;

5

2) the incapacity is likely permanent; and

3) the claimant should retire.

*Id*. Along with the requirements under section 25-11-113, an individual who applies specifically for duty related disability benefits must prove that they were disabled as a "direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of a duty." Miss. Code Ann. § 25-11-114 (Supp. 2015).

¶14. Ulrich applied for duty related disability benefits. The Board found that there was "insufficient objective medical evidence to support the claim that [Ulrich's] medical condition prevents [her] from performing the duties of a teacher." Furthermore, the Board found that Ulrich failed to prove that her disability was related to a traumatic event that occurred while teaching.

¶15. Even where contradictory evidence is in the record, PERS is charged with the duty to "determine which evidence to believe and which evidence should be given greater weight." *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1290 (¶30) (Miss. 2005). Here, PERS found the additional testing and Ulrich's other medical records more persuasive and binding on its decision to deny benefits.

¶16. Ulrich also rests her claim on the fact she was given benefits from the Mississippi Workers' Compensation Commission. As PERS points out, both workers' compensation benefits and PERS disability benefits are based on different standards. Ulrich's workers' compensation claims have no bearing on whether or not she had a valid claim with PERS for

duty related disability. While she could very well have a valid workers' compensation claim, that does not immediately green-light her disability standing with PERS.

¶17. Ulrich cites *Public Employees' Retirement System v. Trulove*, 954 So. 2d 501 (Miss. Ct. App. 2007), in order to support her contention that she presented sufficient objective evidence to support her request for disability benefits. In *Trulove*, this Court affirmed the decision of the Hinds County Circuit Court that Trulove had met her burden to show a disability suffered at work. *Id.* at 505 (¶16). In *Trulove*, the question was not "if" Trulove was disabled, but if her disability was connected to a duty-related traumatic event. At the onset, Ulrich was found not to be disabled. Therefore, the Board could not truly consider whether or not her disability was caused from a traumatic event related to her work as a teacher.

¶18. Mississippi law mandates that where there is "more than a scintilla" of evidence to support a Board's decision, this Court is bound to affirm. While the incidents described by Ulrich are certainly concerning, and she obviously tried to continue working despite her conditions, our review of the record indicates that there was sufficient evidence to support a denial of Ulrich's duty related disability benefits. As a result, we affirm the decisions of the Board and ultimately the Hinds County Circuit Court's judgment.

¶19. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., NOT PARTICIPATING.**