# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-01044-COA

**SHIRLEY E. PINION**                                                                 **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                       **APPELLEE**
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2018 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SAMUEL MARTIN MILLETTE III JANE L. MAPP |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 10/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1. On February 26, 2013, the Board of Trustees (the PERS Board) of the Public Employees' Retirement System of Mississippi (PERS) entered an order approving and adopting the recommendation, findings of fact, and conclusions of law of the PERS's Disability Appeals Committee (the Committee), thereby denying Shirley Pinion's application for in-the-line-of-duty disability benefits pursuant to Mississippi Code Annotated section 25-11-114(6) (Supp. 2011). Dissatisfied, Pinion appealed to the Hinds County Circuit Court seeking reversal of the PERS Board's decision. The circuit court affirmed the PERS Board's

decision on June 22, 2018. Finding the PERS Board's decision was supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Shirley Pinion was employed with the University of Mississippi Medical Center (UMMC) for 23 3/4 years before her departure in 2012.[1]  Around 1997, Pinion received a carpal-tunnel-syndrome (CTS) diagnosis, revealing that the disease was most severe in her right hand.  Despite the diagnosis and its accompanying discomfort, Pinion continued to work in her usual capacity with UMMC.  The daily functions of Pinion's position entailed a great deal of typing and other computer-based work.  In an attempt to avoid surgery, Pinion used braces to assuage the pain.  Unable to cope, Pinion elected to undergo a carpel-tunnel-release surgery on her right hand in July 1999.  The surgery was intended to relieve the CTS symptoms, but Pinion continued to experience pain.  Pinion sought further evaluation from a series of physicians, and each provided different hypotheses about the persisting discomfort.

¶3.     On August 13, 2001, Pinion was referred to and evaluated by rheumatologist Dr. Suzanne Sanders. Dr. Sanders suspected Raynaud's disease as the cause of Pinion's pain and recommended further testing. Dr. Sanders was not able to reach a definitive diagnosis.

¶4.     On February 11, 2004, Pinion sought a pain-management consultation from Dr.

---

[1] At the time of her disability filing, Pinion was the "Manager of Supply Chain Information Services" but had worked in other data-input positions with UMMC over the course of her employment.

2

Jeffery Summers, who suggested sympathetic pain was the culprit. Still seeking relief, Pinion agreed to another surgery and allowed Dr. William Lineweaver to perform a sympathectomy procedure in April 2004. Pinion reported increased pain after the procedure but returned to work in May 2004.

¶5. Failed by surgical solutions, Pinion visited Dr. Rahul Vohra in February 2006. Dr. Vohra developed an effective pharmacologic-pain-management regimen to relieve the unbearable CTS symptoms. Drugs used in Pinion's treatment included a number of narcotic pain medicines and analgesic patches. Pinion experienced notable relief and was able to continue working with the aid of the medications.

¶6. On February 13, 2012, UMMC family physician Dr. Rebecca Waterer evaluated Pinion. Although the prompt for Pinion's appointment with Dr. Waterer is unclear, the visit resulted in a determination that Pinion could not safely perform the work tasks required of her and simultaneously adhere to the drug regimen prescribed by Dr. Vohra.

¶7. On February 14, 2012, UMMC placed Pinion on leave under the Family and Medical Leave Act (FMLA) of 1993, 20 U.S.C. § 2601 et seq. (2012), pending the discontinuation or significant decrease in the use of the narcotics. In light of UMMC's determination, Pinion returned to Dr. Vohra, who adamantly rejected UMMC's request that Pinion discontinue or significantly decrease her use of the narcotics as unreasonable after evaluating Pinion's pain levels. Dr. Vohra also noted that Pinion had followed the drug regimen while working for a number of years without incident. The drugs allowed Pinion to cope with her discomfort

3

so that she could continue working.

¶8. Based on the inability to work without the prohibited pain medication, Pinion filed for PERS duty-related disability benefits (with planned retirement) on February 22, 2012.[2] As a part of the application, Dr. Vohra and Dr. Waterer completed PERS Form 7, "Statement of Examining Physician." Dr. Vohra indicated that Pinion's pain was likely permanent, and Dr. Waterer opined that Pinion could not work while taking the medications used to treat her pain.

¶9. At PERS's request, Pinion submitted to an independent medical evaluation by Dr. Philip Blount in June 2012. Dr. Blount reported that Pinion's ability to continue working was contingent on her tolerance of pain symptoms related to the CTS. After reviewing Dr. Blount's report alongside Pinion's application, the PERS Medical Board denied Pinion's request for disability retirement.

¶10. Pinion appealed the decision to the Committee, which held a hearing on December 3, 2012. The Committee entered its "Proposed Statement of Facts, Conclusions of Law, and Recommendation" to deny Pinion's request for duty-related disability benefits; however, the Committee granted Pinion's request for non-duty-related disability benefits. On February 26, 2013, the PERS Board of Trustees (the PERS Board) entered an order approving and

---

[2] Pinion's employment with UMMC had not ended at the time her "Application for Retirement Benefits" was filed on February 22, 2012, and listed April 4, 2012, as a "Projected Date of Retirement." As of December 3, 2012, Pinion's employment had not ended and she was still on FMLA leave.

4

adopting the Committee's recommendation, findings, and conclusions.

¶11.    Still dissatisfied, on March 27, 2013, Pinion filed an appeal in the Hinds County Circuit Court based on the PERS Board's denial of duty-related disability benefits.  On June 22, 2018, the circuit court entered an order affirming the PERS Board's decision.  Aggrieved, Pinion now appeals.

## STANDARD OF REVIEW

¶12.    PERS is categorized as an administrative state agency, and as such, our judicial review of this administrative appeal is limited.  *Davis v. Pub. Emps' Ret. Sys.*, 750 So. 2d 1225, 1229 (¶12) (Miss. 1999).  This Court has the authority to reverse the decision of PERS if the decision (1) was not supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond PERS Board's power to adopt, or (4) violates a constitutional or statutory provision.  *Id.*  We apply the same standard of review as the circuit court and "may neither substitute [our] own judgement for that of the agency which rendered the decision nor reweigh the facts of the case."  *Pub. Emps' Ret. Sys. v. Walker*, 126 So. 3d 892, 895 (¶5) (Miss. 2013) (citing *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992)).  A rebuttable presumption exists in favor of PERS.  *Id.* (citing *Pub. Emps' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891(¶9) (Miss. 2001)).  The employee seeking the benefit is left with the burden of proving the contrary.  *Davis*, 750 So. 2d at 1230 (¶12).

## DISCUSSION

¶13.    Pinion spent over two decades as a UMMC employee working in various keyboarding

5

capacities. It is uncontested that the corresponding typing and computer tasks contributed to or caused Pinion to develop CTS that ultimately warranted the use of the narcotic pain regimen. Pinion argues that because her CTS was shown to be a permanent and direct result of the UMMC work duties, PERS lacked substantial evidence to deny her request for duty-related disability benefits. While there is an obvious and undisputed link between Pinion's employment and her CTS, absent a corresponding accident or traumatic event, the applicable statute does not render Pinion eligible for duty-related disability benefits. Accordingly, PERS granted Pinion regular, non-duty related disability benefits and maintains that Pinion is legally precluded from recovering the presently requested relief.

¶14. At the time of Pinion's application, Mississippi Code Annotated section 25-11-114(6) (Supp. 2011) governed her eligibility for duty-related disability benefits. The pertinent statutory portion provided that

> [r]egardless of the number of years of creditable service, upon the application of a member or employer, *any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty*, provided that the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further performance of duty and the incapacity is likely to be permanent . . . .

(Emphasis added).

¶15. PERS draws parallels between the instant case and the Court's decision in *Public Employees' Retirement System v. Card*, 994 So. 2d 239 (Miss. Ct. App. 2008), where the Court affirmed the PERS Board's decision to deny Mary Card duty-related disability

6

benefits. *Id.* at 245 (¶30). After working as an accounting assistant with the State for fifteen years, Card developed severe pain from writing and was subsequently diagnosed with CTS. *Id.* at 241 (¶5). Like Pinion, Card underwent carpel tunnel release surgery but continued to experience discomfort. *Id.* at 241 (¶6). Akin to the "shearing injury" idea Pinion advances, Card argued that she was qualified for duty-related disability benefits based on a micro-trauma theory. *Id.* at 245 (¶31). Evidence revealed that, like Pinion, Card had "consistently experienced problems with carpal tunnel." *Id.* Consistent with the PERS Board's decision, the Court rejected Card's micro-trauma theory, determining that it did not fall within the statutory definition of a "traumatic event," and found that Card "provided no evidence of [CTS] resulting from an accident or traumatic event." *Id.* at 246 (¶32).

¶16.    The Court embraced the Mississippi Office of the Attorney General's interpretation of a "traumatic event":

> [A]n event in which a worker involuntarily meets with a physical object or some other external matter and the worker is a victim of a great rush of power that he himself did not bring into motion. This definition was held not to include physical injuries resulting from a slip and fall accident and physical conditions resulting from a slip and fall accident and physical conditions resulting from an excessive work effort.

*Id.* (quoting Miss. Att'y Gen. Op., 93-1017, 1994 WL 117329, at *2 (Mar. 16, 1994)).

¶17.    Mirroring *Card*, Pinion struggles to identify any "accident or traumatic event" that "occur[ed] in the line of duty" and can be connected to her diagnosis. In fact, Pinion fails to pinpoint any actual accident or traumatic event at all that comports with the applicable statute and interpretation referenced in *Card*. Pinion argues that the statute is ambiguous and

7

the Court improperly adopted the Attorney General Opinion's definition of "traumatic event." Gleaning legislative intent from the subsequent codification of the *Card* decision, we disagree. In 2016, lawmakers amended the statute outlining eligibility for duty-related disability benefits as follows:

> Regardless of the number of years of creditable service, upon the application of a member or employer, any active member who becomes disabled as a direct result of a physical injury sustained from an accident or traumatic event *caused by external violence or physical force occurring in the line of performance of duty*, provided that the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further performance of duty and the incapacity is likely to be permanent . . . .

Miss. Code Ann. § 25-11-114(6) (Rev. 2016) (emphasis added). The amendment clarified that the "accident or traumatic event" must be "caused by external violence or physical force occurring in the line of performance of duty" and reflects Attorney General Opinion Number 93-1017 acknowledged by this Court.

¶18. Despite the statute's progression, Pinion asserts the Attorney General's definition is "clearly against the weight of modern medical evidence" and cites an online research article hypothesizing a causal link between CTS and a "shearing injury."[3] Pinion opines the "shearing injury" must have occurred during the work-related keyboarding at UMMC and unsuccessfully petitions this Court to qualify the injury as a traumatic event in the line of

---

[3] Mayo Clinic, *Researchers Find Evidence for Traumatic Cause of Carpal Tunnel Syndrome* (Nov. 10, 2006), ScienceDaily, http://www.sciencedaily.com/releases/2006 /11/061109153942.htm (last visited Oct. 29, 2019).

duty.

¶19.    At best, the article purports that researchers determined a "shearing injury" *may* cause CTS.  Mayo Clinic, *supra* note 3.  For the sake of argument, even if we accepted the article's hypothesis as true, Pinion failed to provide relevant evidence specific to her diagnosis.  No medical records or testimony from any of Pinion's doctors support a finding that any particular accident, event, or "shearing injury" caused her CTS.  Form 8 of the disability application requires the applicant, Pinion, to provide a description of the alleged disability.  Pinion begins by writing, "I developed carpel tunnel in both hands around 1996-97 . . . ."  Also, an injury report dated June 17, 1999, indicates "continuous typing" as the cause.  The medical records and forms completed by her treating physicians reflect the same.

¶20.    Throughout her briefs, Pinion also discusses the 1999 carpel-tunnel-release surgery as the qualifying cause of her pain.  Again, Pinion's assertion does not meet the statutory requirement.  It would be counterintuitive to qualify the surgery as the cause of the CTS it was intended to treat.  While the surgery was perhaps traumatic, especially given its failed attempt at alleviating Pinion's CTS pain, the procedure was elective and certainly did not occur in the line of performance of duty.  Pinion's "lack of evidence presented to PERS creates the substantial evidence necessary for this Court to uphold the Board's decision." *Card*, 994 So. 2d at 246 (¶33).  Thus the assertion that Pinion suffered a traumatic event of some sort is without merit, and the Board's decision should stand.

¶21.    Pinion correctly points to the Court's ruling in *Public Employees' Retirement System*

9

*v. Trulove*, 954 So. 2d 501 (Miss. Ct. App. 2007), as being instructive but not in her favor. Nurse Truelove had suffered neck and shoulder injuries in an August 1995 automobile accident that occurred during the course of her work duties but continued her employment. *Id.* at 502 (¶¶4-5). Five years later, in October 2000, Truelove suffered a second work-related injury while attempting to restrain a patient and subsequently filed for duty-related disability. *Id.* at 502 (¶¶6-7). In support of her claim, Truelove submitted corroborative findings from her physician along with a detailed incident report Truelove completed the day after the second incident. *Id.* at 504 (¶14). The Court reversed the PERS Board's decision, holding that the Committee failed to "thoroughly consider" medical evidence and the incident report evincing Trulove's eligibility for duty-related disability benefits. *Id.* at 505 (¶15). The Court also noted that Trulove sustained not one, but *two* qualifying injuries. *Id.* at 505 (¶16). As previously discussed, neither Pinion's records nor her incident report established the existence of a qualifying traumatic event.

¶22. Pinion also distinguishes the current facts from those involved in the denial of the duty-related disability claim in *Brinston v. Public Employees' Retirement System*, 706 So. 2d 258 (Miss. Ct. App. 1998). Mary Brinston also suffered from CTS, but unlike Pinion, the facts clearly established that Brinston suffered a traumatic event while engaged in the performance of her work duties. *Id.* at 259 (¶¶2-3). For Brinston, timing emerged as the primary issue when Brinston was unable to connect her CTS diagnosis date with the injury she suffered. *Id.* at 259 (¶2). Ultimately, both of the plausible diagnoses' dates predated

10

Brinston's injury, establishing that the traumatic event could not have been the cause of Brinston's CTS. *Id.* Pinion argues that because her UMMC employment and CTS undisputedly overlap, the outcome here should differ from the result in *Brinston*. We disagree.

¶23. Finally, Pinion directs this Court to *Cartagena v. City of New York*, 345 F. Supp. 2d 414 (S.D.N.Y. 2004). The New York case, considered only as persuasive authority, is consistent with the above referenced precedent of our Court and likewise distinguishable from the case at bar. The *Cartagena* court reversed an administrative decision denying a New York police officer active-duty retirement benefits (i.e., duty-related disability benefits). *Id.* at 415. Facts indicated that Officer Cartagena tripped and injured her right hand while in pursuit of a robbery suspect. *Id.* After approximately one year of subsequent visits and consultations in connection with her injury, Cartagena was diagnosed with CTS. *Id. Cartagena* and the other cases cited by Pinion present a recurring theme marked by stark contrast to the present set of facts—*a traumatic event or accident existed*. As discussed above, Pinion's record is devoid of any alleged accident or traumatic event as defined by the statute.

¶24. Absent the showing of evidence that an accident or traumatic event even occurred, the Board had substantial evidence to deny Pinion's request for duty-related disability benefits.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., NOT PARTICIPATING.**