## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CC-01534-SCT

*MISSISSIPPI REAL ESTATE COMMISSION*

*v.*

*SANDRA ANDING*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/97 |
| TRIAL JUDGE: | HON. R.I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN L. MAXEY, II |
| | JOHN F. HAWKINS |
| ATTORNEY FOR APPELLEE: | ALLEN FLOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED-2/4/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

### BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. The Mississippi Real Estate Commission appeals an October 27, 1997 order of the Lamar County Circuit Court reversing the sanctions imposed by the Commission against Sandra Anding, a real estate salesperson. While the parties basically agree on the facts, they differ as to whether the circuit court correctly applied the law to those facts in making its decision. Finding that the Commission's decision is not supported by the evidence in the record, we affirm the decision of the circuit court.

I.

¶2. Sandra Anding held a license as a real estate salesperson under the direction of the responsible broker, Brian McPhail of Colonial Realty in Hattiesburg, Mississippi, where she had worked for three years. She filed a Real Estate Transfer License Application with the Mississippi Real Estate Commission on April 29, 1996. A new certificate licensing her as a real estate salesperson affiliated with John J. Bethea, Jr., of Bethea Properties, also in Hattiesburg, was issued on May 6, 1996.

¶3. In a prepared statement presented at the Commission hearing, Anding, who was not represented by counsel during the administrative proceedings, discussed her departure from Colonial Realty and the arrangements she had made with McPhail,

I created a rental management system that I ran for Colonial Realty. But the time came for me to

move on. In life we all strive to improve ourselves. As a single parent, I needed the security of knowing from day to day that I had a career and a secure income. I set my goal on a broker's license and operating my own company. In discussing this with Brian, he did not understand why I needed the security of my broker's license. He expressed anger and disappointment that I would do this to him. After all, he gave me opportunity to start this department at his company. In our discussion of my decision , he asked me to make a list of theses properties, tenants, phone numbers, et cetera. I told Brian that I had the files and that I was making sure that each file had a cover sheet to go with the status of the property and the tenants, et cetera, and that I would stay until the May accounts were closed for the May rental time period, which was usually around the 10th of each month, just to make sure that he knew how to run the rental department. Until this point, he had never ran monthly statements, paid bills or communicated with any of the clients. This was done solely by myself. When I left his office on Wednesday, April the 24th, I felt that everything was okay, and an understanding was made. I went back to the office on Friday, April the 26th, that morning to discover my license was taken off the wall and my empty frame left on my desk. At this time I felt I no longer had a relationship with Colonial realty. I felt notifying my clients of my departure was a courtesy, since most of the clients had never had any contact with anyone other than myself. I contacted them by sending them letters which is [sic] attached to the complaint. Only those clients who contacted me were transferred. I never once called any of them. Transfer letters were signed, and I made a copy of their monthly statements from January through April. Copies of the monthly income and expense statements were made by me. The reason I made these [was] to make sure that at the end of the year, I had their end-of-the-year reports that were normally sent out. I knew that Brian did not know how to do these reports since he had never participated in the last three years. The harm of having me make these reports, I felt, was none. It only saved clients, Brian and myself [sic] of making the copies later. I did not do this for any secretive stab in the back but to save the embarrassment of Brian not knowing where to find the files or what copies to make.

¶4. According to McPhail, Anding spent the month of April soliciting Colonial Realty's accounts. He provided no specific details. Admittedly, Anding notified clients that she was leaving Colonial Realty. An undated letter included in the record, apparently that which Anding sent to all of her clients, stated only:

I am writing this letter to inform you that as of April 30, 1996, I will no longer be licensed with Colonial Realty, Property Management Department. I will be associated with Bethea Properties. I am going to be in Rental Property Management. I will be using the same management system that I began 3 years ago. I will have Lisa Bethea as an assistant and John Bethea as my broker. They are both long time residents of the Hattiesburg area. If I can be of any help to you now or in the future please feel free to call me at home 264-2230.

¶5. McPhail filed a complaint with the Mississippi Real Estate Commission on August 21, 1996. He charged that in April, 1996, Anding solicited new rental accounts on behalf of Bethea Properties while still affiliated with Colonial Realty; citing the above-quoted letter, claimed that she induced clients to breach their contracts with Colonial; and further, that she removed files from the office, all without his knowledge or consent.

¶6. Anding received written notice from the Commission of McPhail's complaint on August 22, 1996. She responded in an August 30, 1996 letter to the Commission, attaching letters of reference and information about the accounts brought into question by McPhail's complaint. Further, she stated that any records in her

possession were duplicates of those at Colonial Realty and assigned to her by clients, whose authorizations were attached to the response. In closing, she stated, "There is much more to this story, however I feel that my success is being tampered with by jealousy, instead of appreciation." The Commission, acting upon a sworn statement of complaint from Brian McPhail, the responsible broker with whom Anding had been associated at Colonial Realty in Hattiesburg, Mississippi, filed a complaint against Anding on December 10, 1996. The complaint alleged that Anding had sent letters to property owners whose rental properties were managed by Colonial Realty, advising them that she was moving to another firm, Bethea Properties. It further stated that she was issued a new salesperson's license to be affiliated with John J. Bethea, Jr., and when inquiry was made by the Commission, allegedly characterized herself as an independent contractor and admitted that she had taken duplicates of records with her when she left Colonial Realty. Based on these allegations, the Commission charged that Anding violated the Mississippi Real Estate Broker's License Act of 1954, as amended, as well as Rule IV.A.6 of the Rules and Regulations.[1]

¶7. In its two-page finding of facts, the Commission briefly outlined Anding's duties at Colonial Realty and reiterated the allegations raised in the complaint that she "solicited those owners listed with Colonial Realty for the purpose of inducing them to move their listings to her new place of employment" and "characterized herself as an independent contractor and admitted that she had taken records with her from Colonial Realty when she left to go to a new broker but claimed that those records were duplicates, not the originals." The Commission's findings, in their entirety, are taken verbatim from paragraphs I and II of its Amended Complaint. The Commission's conclusions of law are a verbatim recitation of paragraph III of the Amended Complaint, stating that Anding's actions violated Miss. Code Ann. §§ 73-35-3(4) and 73-35-21(k) and (m), as well as Rule IV.A.6 of its Rules and Regulations. Based on these "Findings of Fact" and "Conclusions of Law," the Commission disciplined Anding by revoking her license for one year to be held in abeyance subject to her not holding the position of responsible broker for a period of two years and within one year, completing eight hours of continuing education, four hours of which is license law, in addition to those hours already required by law. She was permitted to continue her real estate brokerage activities subject to those conditions.

¶8. Anding appealed the Commission's ruling to the Circuit Court of Lamar County on February 20, 1997. The Commission responded with a motion to dismiss, which was denied by the circuit court on April 10, 1997. The Commission again filed a motion to dismiss on June 26, 1997, citing Anding's failure to timely file her brief in the case. Because the Circuit Clerk had not notified Anding of the deficiency, the motion was denied.

¶9. The circuit court found that the record did not support the Commission's finding that Anding induced any clients to break contracts with Colonial Realty or wrongfully transferred any files which contained "pertinent information," which could rise to the level of "bad faith, incompetency or untrustworthiness," dishonesty, fraud or improper dealing. Thus, finding that the Commission's findings of fact and conclusions of law were not supported by substantial evidence, the circuit court reversed the decision of the Commission by order dated October 27, 1997.

II.

¶10. The Commission asserts that its order is supported by substantial evidence in the record, warranting a reversal of the circuit court's decision and a reinstatement of the agency action disciplining Anding. Anding asserts that the record is bereft of any clear and convincing evidence that she acted in violation of the

Mississippi Real Estate Brokers License Act. We note that the Commission's Findings of Facts and Conclusions of Law, sections II and III of the order, are taken in their entirety, verbatim, from paragraphs I, II and III of the Commission's Amended Complaint against Anding. Although we generally will not review de novo the facts in an administrative appeal, *Mississippi State Board of Nursing v. Wilson*, 624 So. 2d 485, 489 (Miss. 1993), heightened scrutiny of the Commission's "findings" and "conclusions of law" thus is appropriate since the Commission has adopted its own allegations as findings and conclusions. *See Brooks v. Brooks,* 652 So. 2d 1113, 1118 (Miss. 1995)(where chancellor adopted verbatim the findings of fact and conclusions of law submitted to the court by one of the parties, "the deference normally afforded a chancellor's findings of fact is lessened.")

¶11. When a realtor is threatened with the suspension or loss of his broker's license, he is protected by familiar standard that the "'testimony . . . clearly establish . . . the guilt of the respondent.'" *Mississippi Real Estate Comm'n v. White*, 586 So. 2d 805, 808 (Miss. 1991)(*quoting Harris v. Mississippi Real Estate Comm'n*, 500 So. 2d 958, 963 (Miss. 1986)). *See also Mississippi State Bd. of Psychological Exam'rs v. Hosford*, 508 So. 2d 1049, 1054 (Miss.1987)(in a variety of contexts, "disciplinary charges against a professional must be proved by clear and convincing evidence.")

¶12. The standard of review employed by both this Court and the circuit court is well established. The circuit court has no authority to intervene unless the Commission's decision is arbitrary and capricious, "a standard we have equated with our familiar substantial evidence rule limiting our scope of review of trial court findings of evidentiary and ultimate fact." *Harris,* 500 So. 2d at 962; *Smith v. Sullivan*, 419 So. 2d 184, 187-88 (Miss. 1982); *Mississippi Real Estate Comm'n v. Ryan*, 248 So. 2d 790, 793-94 (Miss. 1971). The scope of judicial review of the findings and actions of an administrative agency, therefore, is limited to determining whether the agency's order (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. *Mississippi Real Estate Comm'n v. Hennessee*, 672 So. 2d 1209, 1214 (Miss. 1996)(citing the standard adopted in *Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair*, 222 So. 2d 664, 665 (Miss. 1969)). "'The only grounds for overturning [an] administrative agency action by the appellate process is that the state agency has acted capriciously, unreasonably, arbitrarily; has abused its discretion or has violated a vested constitutional right of the party.'" *Hennessee*, 672 So. 2d at 1214 (*quoting Melody Manor Convalescent Ctr. v. Mississippi State Dept. of Health*, 546 So. 2d 972, 974 (Miss. 1989)). Thus, this Court will not overturn any administrative agency's finding that is based upon "substantial evidence appearing in the record." *Eidt v. City of Natchez*, 421 So. 2d 1225, 1232 (Miss. 1982); *Mississippi State Tax Comm'n v. Package Store, Inc.*, 208 So. 2d 46 (Miss. 1968).

¶13. The circuit court found that the Commission's order was not supported by substantial evidence. In *Mississippi Real Estate Comm'n v. Ryan*, 248 So. 2d 790 (Miss. 1971), this Court defined the meaning of "substantial evidence," stating that "substantial evidence means more than a scintilla; it must do more than create a suspicion, especially where the proof must show bad faith." *Ryan*, 248 So. 2d at 794 (citing 2 Am. Jur. 2d Administrative Law § 688 at 572 (1962)). Addressing the circuit court's reversal of a broker's license revocation based on bad faith, we further stated:

> In order to take or suspend the license of a real estate broker under a charge of bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings, the proof need not be beyond a reasonable doubt, (2 Am. Jur. 2d Administrative Law section 392, page 199 [1962]),

but the testimony must clearly establish the guilt of the respondent. Proof of surmise, conjecture, speculation or suspicion is not sufficient.

*Id.* at 793 (citing 2 Am. Jur. 2d Administrative Law § 393 (1962)).

¶14. As the circuit court found, there is not substantial evidence in the record to support the Commission's "findings." The Commission primarily alleged and "found" that Anding "solicited those owners listed with Colonial Realty for the purpose of inducing them to move their listings to her new place of employment" in contravention of Miss. Code Ann. §§ 73-35-21 (k) and (m). It further alleged and "found" that Anding "characterized herself as an independent contractor and admitted that she had taken records with her from Colonial Realty when she left to go to a new broker but claimed that those records were duplicates, not the originals."

¶15. Section 73-35-21(k) provides for sanctions when a realtor acts to "[i]nduc[e] any party to a contract, sale or lease to break such contract for the purpose of substituting in lieu thereof a new contract, where such substitution is motivated by the personal gain of the licensee," while § 73-35-21(m) allows disciplinary action for "[a]ny act or conduct, whether of the same or a different character than hereinabove specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing." There simply is no evidence in the record to indicate that Anding acted to induce any Colonial Realty client to breach a contract with the agency. Rather in her statement before the Commission, Anding stated:

> I felt notifying my clients of my departure was a courtesy, since most of the clients had never had any contact with anyone other than myself. I contacted them by sending them letters which is [sic] attached to the complaint. Only those clients who contacted me were transferred. I never once called any of them. Transfer letters were signed, and I made a copy of their monthly statements from January through April.

¶16. The record contains one letter from Anding advising a client that she was leaving Colonial Realty, joining Bethea Properties, and could be reached at home if any assistance was needed. It further includes four letters from clients giving Bethea Properties authority to obtain client records from Colonial Realty; Anding's handwritten note indicates that "some clients are not under contract." Four letters from clients attested to their satisfaction with Anding's professional expertise and/or that they regarded her letter as a professional courtesy, and not as a solicitation. John Bethea, Jr., the managing broker under whom Anding works at Bethea Properties characterized McPhail's complaint as "sour grapes"over lost revenues and the loss of a part-time secretary he didn't have to pay. No testimony in the brief record of the administrative proceeding points to any specific act of inducing a client to breach a contract, or of "bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing." Miss. Code Ann. § 73-35-21 (m). We further find no evidence in the record to suggest that brokers moving from one firm to another are restricted from notifying clients of an impending move; that they are, in any way, restricted from taking clients with them; or that Anding violated any accepted industry practice in making her move from Colonial Realty to Bethea Properties.

¶17. There further is no basis for the Commission's determination that Anding did anything wrong in taking duplicate copies of client records with her. McPhail testified only that Anding took "just files that were transferred . . . but -- and my point is that an owner -- somebody out there that I have an account for can't ask her to take a file out of my office. Their contract is with me, not with her." There was, however, no

evidence in the record that Anding took anything but duplicate copies of client records or that this was contrary to accepted practice. Indeed, in oral arguments before this Court, the Commission's attorney conceded that Anding had done nothing wrong in taking copies of the client files with her.

III.

¶18. This Court generally will not reweigh facts or substitute its judgement for that of the administrative agency. ***Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors,*** 621 So. 2d 1211, 1216 (Miss. 1993). However, the evidence in the record, at best, suggests that Anding acted in her own self-interest, as well as in the best interests of her clients, in notifying the owners of those properties that she managed that she was moving to another firm and making copies of some records they might need. We find no evidence that Anding acted contrary to the standard and practice of the industry or that she improperly *induced* clients to leave Colonial Realty. Thus, as the circuit court correctly found, there is not substantial evidence in the record to support the Commission's "findings," such as they are. We therefore affirm the decision of the circuit court reversing the order of the Mississippi Real Estate Commission.

¶19. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. Miss. Code Ann. §§ 73-35-21 (k) and (m) (Supp.1998) provide for sanctions for violations including:

> (k) Inducing any party to a contract, sale or lease to break such contract for the purpose of substituting in lieu thereof a new contract, where such substitution is motivated by the personal gain of the licensee;

> (m) Any act or conduct, whether of the same or a different character than hereinabove specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing.

Further, Rule IV.A.1 of the Rules and Regulations provides as follows:

> It shall be the duty of the responsible broker to instruct the licensees licensed under that broker in the fundamentals of real estate practice, ethics of the profession and the Mississippi Real Estate License Law and to exercise supervision of their real estate activities for which a license is required.