# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-01045-COA

**BRIAN CARVER**                                             **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**         **APPELLEE**
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/03/2018 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SAMUEL MARTIN MILLETTE III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 10/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. This disability-benefits appeal arises from a decision denying Carver duty-related disability benefits from the Public Employees' Retirement System of Mississippi (PERS). This Court, having fully considered the parties' briefs, the record, and the applicable law, affirms the Hinds County Circuit Court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. The facts in this case detail various incidents that Carver faced while on duty for the Jackson Police Department (JPD). The parties do not dispute these events.

¶3. In January 2004, Carver shot and killed an individual while on duty as a patrolman for

JPD. After the shooting, JPD referred Carver to Dr. Jerry Alford as a matter of policy. Carver visited with Dr. Alford twice to determine whether he was fit to return to work. Carver was eventually cleared.

¶4.    Several months after returning to work, Carver responded to a domestic-violence dispatch. At the scene, Carver explained that everyone was yelling and screaming at each other causing him to become "highly anxious." In distress, Carver drew his weapon and kicked in the door. As the door flew open, a screaming child standing behind it was hit. Carver "froze." He testified that he could not move or enter the house. As a result, Carver's accompanying officers took charge of the situation. After the event, Carver did not take time off from work or seek professional counseling. He feared counseling would end his career.

¶5.    At a hearing to determine his disability benefits, Carver admitted these facts. He also stated that he struggled with other domestic-violence situations. He explained that there were some domestic-violence dispatches that he could not handle. During those instances, Carver waited until other officers arrived instead of immediately responding. He even detailed one specific instance where he set off his emergency button because he could not handle a group of people yelling.

¶6.    In 2007, Carver transferred from his midnight shift on the radio-car dispatch patrol to the police-motor unit. Rather than responding to thefts, burglaries, and domestic-violence calls, the police-motor unit dealt with traffic-related matters, such as motorcycle patrol and tag violations. During this time, Carver was fighting insomnia by periodically taking prescription medication. And even though the transfer helped, Carver testified that there

2

were times he would get anxious when people did not stop right away. He feared that he would be placed in a position that required him to use deadly force.

¶7. Carver also testified that he had failed to report these incidents to JPD. He did, however, speak with a supervisor asking whether officers were required to report these types of feelings. In November 2009, Carver started seeking assistance from a licensed professional counselor to help combat his anxiety. The next month, in December 2009, Carver testified that he was involved in an incident over a minor situation while on patrol during a Christmas parade. He stated that he was afraid he might use his weapon inappropriately. Carver expressed these feelings to his professional counselor, and with his permission, the counselor informed Carver's supervisors about the situation.

¶8. Carver stated that after this incident, JPD relieved him of his gun, and he took a medical leave of absence. The next week, Carver received two letters terminating his employment. After his termination, Carver's counselor wrote a letter opining that Carver suffered from post-traumatic stress disorder (PTSD). Carver was subsequently evaluated by Dr. Webb, a psychiatrist, who stated that all of the above-mentioned traumas and incidents caused his PTSD.

¶9. Carver applied for non-duty and duty-related disability benefits. The PERS Medical Board granted him non-duty related disability benefits but denied his request for duty-related disability benefits. Carver appealed the decision to the Disability Appeals Committee (DAC), which held a hearing and agreed with the Medical Board's decision. The DAC recommended that the Board of Trustees (PERS Board) deny Carver duty-related disability

3

benefits. The PERS Board adopted the DAC's findings and recommendations. Carver appealed the PERS Board decision to the Hinds County Circuit, but the circuit court affirmed. It is from that decision that Carver now appeals to this Court.

**STANDARD OF REVIEW**

¶10. Our review of an administrative agency's decision is limited in this Court. The conclusion of the agency withstands appellate review unless the decision is: "(1) not supported by substantial evidence; (2) is arbitrary and capricious; (3) is beyond the scope or power granted to the agency; or (4) violates one's constitutional rights." *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶11) (Miss. 2000). A decision by the PERS Board has a rebuttable presumption in favor of its ruling. *Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶14) (Miss. Ct. App. 2008) (quoting *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (¶9) (Miss. 2001)). If the agency's decision is supported by substantial evidence, then the agency's decision stands. *Pub. Emps.' Ret. Sys. v. Walker*, 126 So. 3d 892, 895 (¶7) (Miss. 2013).

¶11. Substantial evidence has been defined by our supreme court as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Id.* (quoting *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991)). In short, the evidence must be more than a mere scintilla or suspicion. *Miss. Real Estate Comm'n v. Anding*, 732 So. 2d 192, 196 (¶13) (Miss. 1999). "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on will alone." *Burks v. Amite Cty. Sch. Dist.*, 708 So. 2d 1366, 1370 (¶14) (Miss. 1998). An act is capricious if it is done

4

without reason, "in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts" and settled controlling principles. *Id.*

## DISCUSSION

¶12. A member can receive disability benefits from PERS in two ways. The first way is for members who are vested and become disabled for any reason. Miss. Code Ann. § 25-11-113 (Rev. 2010). The second way is duty-related disability benefits for any members, no matter how many years of creditable service, who are injured in conjunction with their employment duty. Miss. Code Ann. § 25-11-114 (Rev. 2010).

¶13. Carver applied for both forms of disability benefits. The Medical Board granted Carver disability benefits under the first approach but denied his request for duty-related benefits. Carver appealed the Medical Board's decision, and was granted a hearing before the DAC.

¶14. The DAC recommended that the PERS Board deny Carver's request for duty-related disability benefits. The PERS Board adopted the Committee's recommendation, and Carver appealed to the circuit court. The circuit court affirmed the PERS Board's decision. Carver now appeals to this Court.

¶15. On appeal, Carver claims that the PERS Board's decision was not supported by substantial evidence. He also claims that the decision was arbitrary and capricious because it was not supported by medical evidence in the record. In opposition, PERS alleges that "there is no evidence that the shooting caused 'physical injury' to Carver."

¶16. Section 25-11-114(6) provides duty-related disability benefits for "any active member

5

who becomes disabled as a direct result of an accident or traumatic event resulting in a *physical injury* occurring in the line of performance of duty," regardless of the number of years of service. (Emphasis added). Carver had the burden to show that he qualified for this type of disability. *See Dishmon*, 797 So. 2d at 893 (¶15). The Committee found that he did not meet this burden, stating:

> Per statute, Mr. Carver must establish objective medical and psychiatric evidence that his disability was directly caused by a duty-related accident or "traumatic event" that resulted in a *physical injury*.
>
> While this Committee does not refute Mr. Carver's diagnosis of PTSD, there is no evidence that the shooting caused actual "physical injury" to Mr. Carver, but rather the incident resulted in PTSD which then manifested with certain physical symptoms such as insomnia and anxiety.

¶17. Carver asserts that the "PERS Board [did not give] credence to Dr. Webb's opinions." Dr. Webb testified:

> Q. Did you come to any particular conclusion[s]?
>
> A. I did.
>
> Q. What were those?
>
> A. That [Carver] is suffering [from] a *mental illness* consistent with post-traumatic stress disorder, and that he presently was unable to work as a police officer.
>
> Q. Well, use the – you used the word mental illness. Now when we talk about mental illness, is it a – are mental illnesses just solely mental or are they also a physical injury?
>
> A. The more and more we learn about all mental illnesses, most mental illnesses I will say, they are basically – they're brain illnesses, brain disorders, they're nerve chemical illnesses. When a person gets depressed, they have physiological symptoms. With PTSD, like Mr. Carver, he has physiological symptoms. Difficulty sleeping, difficulty

6

with concentration, difficulty with fear. Those are physiological symptoms, which are brain and physical symptoms.

Q. Well, you know, I'm merely a laymen, but, I mean, the brain is an actual physical part of the body?

A. Most definitely. It is – the stressors in some people, not everybody, in some people will affect physiological changes such as sleep, appetite, fear, anxiety, etc.

Q. So is it fair to say that, you know, a mental illness is really not – it's a physical illness as well?

A. Oh, most definitely. We're medical doctors. This isn't sort of a – just a feeling or just a thought, this is a complex – symptom complex of many physiological changes in the body.

¶18. Carver cites to *Trulove* in support of his argument. *Pub. Emps.' Ret. Sys. v. Trulove*, 954 So. 2d 501 (Miss. Ct. App. 2007). In that case, PERS denied duty-related benefits to an employee who injured her neck. *Id.* at 50-04 (¶¶13-14). PERS did not contest that Trulove was disabled but disputed whether her disability was connected to a duty-related traumatic event. *Id.* at 503 (¶12), 505 (¶16). This Court disagreed with PERS and affirmed the circuit court by finding that PERS had failed to thoroughly consider all of the notes and records pertinent to the employee's injury. *Id.* at 505 (¶¶15-16).

¶19. We fail to see how *Trulove* helps Carver's position. In *Trulove*, the PERS Board failed to consider the doctor's notes and gave no weight to Trulove's incident report. *Id.* at (¶15). In the instant case, the PERS Board made its ruling based on Dr. Webb's testimony. In the lengthy statement of findings of fact and conclusions of law adopted by the PERS Board, the Committee addressed Dr. Webb's deposition testimony:

Dr. Webb stated this mental illness is also a "physical illness" as there are

7

physiological symptoms that result from the psychological condition. . . . Dr. Webb, when [led], characterized PTSD as a "physical injury," but his overall testimony clearly indicated he was referring to the physical symptoms associated with a mental illness, not an actual acute physical injury caused by an outside force.

After reviewing the transcript, it is apparent that Dr. Webb testified that Carver was "suffering [from] a mental illness consistent with post[-]traumatic stress disorder . . ." and not a physical injury resulting from that traumatic event.

¶20.   We also agree with Dr. Webb's findings and the PERS Board's determination that PTSD is not a physical injury.  As Dr. Webb testified, PTSD fluctuates chemicals in the brain that may manifest physiological symptoms.  Carver claims that PTSD is a "physical injury" because it caused him to suffer physiological symptoms.  But Carver's claim, while thought-provoking, is misplaced.  A plain-language reading of section 25-11-114(7)(b) clearly distinguishes mental disabilities and physical disabilities.  That statute reads, "A mental disability based exclusively on employment duties occurring on an ongoing basis shall be deemed an ordinary disability."  Effectuating this statute suggests that the Legislature intended to keep mental disabilities, like PTSD, separate from section 25-11-114(6)'s "physical injury."

¶21.   Lastly, Carver argues that the PERS Board failed to present medical evidence or testimony that contradicts Dr. Webb's medical opinion.  Yet the PERS Board did not need to present contradictory evidence.  Instead, the PERS Board's decision was based upon agreement with Dr. Webb's findings.

¶22.   The dissent urges this Court to reconsider the application of "physical injury" under

8

section 25-11-114(6). According to the dissent, Carver's PTSD "became a physical injury" when his mental illness caused him physiological symptoms. But we find ourselves reluctant to adopt such a rule. To begin, we opt against expanding the definition of "physical injury" to encompass illnesses and injuries that manifest from physiological symptoms, as proposed by the dissent, because doing so may require future courts to forgo section 25-11-114(7)(b) of the statute. If we accepted the dissent's definition of "physical injury," PERS members would be entitled to duty-related disability benefits for an unending number of illnesses or injuries regardless of whether they are physical or mental. For example, if Carver had been diagnosed with *depression* and began experiencing physiological symptoms, such as insomnia, loss of appetite, and fatigue, then he would be entitled to duty-related disability benefits. We find that such an interpretation, however, negates the intent of section 25-11-114(7)(b). For clarity, we reiterate that section 25-11-114(7)(b) explicitly *separates* mental disabilities from physical disabilities and each disability's corresponding benefit. Furthermore, it is not the role of this Court to alter the intent of the Legislature where the statute is clear. We also "must not broaden or restrict a legislative act." *Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1027 (¶7) (Miss. 2011) (citing *Barbour v. State ex rel. Hood*, 974 So. 2d 232, 240 (¶13) (Miss. 2008)). "The function of this Court is not to decide what a statute should provide, but to determine what it does provide." *Russell v. State*, 94 So. 2d 916, 917 (Miss. 1957). Because of that, it necessarily follows that this Court upholds the principles of separation of powers and the checks-and-balances system.

¶23. That said, Mississippi law mandates that when there is "more than a scintilla" of

9

evidence to support a PERS Board's decision, this Court should affirm. *Anding*, 732 So. 2d at 196 (¶13). And while the incidents triggering Carver's disability are tragic, our review of the record indicates that there was substantial evidence to support a denial of Carver's duty-related disability benefits, and the decision was neither arbitrary nor capricious.

## CONCLUSION

¶24. Based on the foregoing, the Hinds County Circuit Court's judgment is affirmed.

¶25. **AFFIRMED.**

**BARNES, C.J., WESTBROOKS, TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J., AND McCARTY, J. J. WILSON, P.J., NOT PARTICIPATING.**

**LAWRENCE, J., DISSENTING:**

¶26. The majority finds that Brian Carver's diagnosis of Post Traumatic Stress Disorder (PTSD) does not amount to a "physical injury," which is required before a claim can be made for "in the line of performance of duty" benefits pursuant to Mississippi Code Annotated section 25-11-114(6) (Rev. 2010). I certainly understand the majority's opinion and legal reasoning. However, I believe there was ample evidence in this case that proved Carver's PTSD was not just a mental affliction but one that manifested itself physically and became a physical injury. The record showed that Carver had a severe case of PTSD that left him unable to perform his duties as a police officer after years of service. I would find that Dr. Webb's testimony provided substantial evidence that Carver was physically incapacitated while in the line of duty as a police officer with the Jackson Police Department (JPD).

10

Accordingly, I respectfully dissent.

¶27. The record indicates that Carver began to suffer from anxiety, mood changes, and restless sleep after he shot and killed a man while working as a JPD patrolman in 2004. Carver testified that these symptoms interfered with his ability to function as a police officer. Carver, however, did not stop working. He continued to work with this issue for many years. He had other incidents throughout his long career that exacerbated the effects of his injury. Concerned about the increasing nature of his symptoms over the years, he sought medical help. In 2011, Carver was diagnosed with PTSD that stemmed from the shooting in 2004. After he was put on leave, Carver applied for duty-related disability benefits. Those benefits are provided for in section 25-11-114(6) as follows:

> Regardless of the number of years of credible service upon the application of a member or employer, any active member who becomes disabled as a direct result of an accident or **traumatic event resulting in a physical injury** occurring in the line of performance of duty, provided the Medical Board or other designated government agency after medical examination, certified that the members are mentally or physically incapacitated for the further performance of duty and such incapacities are likely to be permanent may be retired by the Board of Trustees . . . .

(Emphasis added). There is little doubt in this case that Carver suffered a traumatic event while working as a police officer, which caused his health problems. The issue is whether his injury qualifies as a physical injury.

¶28. Dr. Mark Webb testified as an expert witness for Carver. On multiple occasions, Dr. Webb clarified, in his opinion, that PTSD was a physical injury. Dr. Webb repeatedly referenced the diagnosis of PTSD as a "physical illness." Dr. Webb stated the following:

Q.     . . . Now when we talk about mental illness, is it a -- is it a -- are mental

11

illnesses just solely mental or are they also a physical injury?

A.    The more and more we learn about all mental illnesses, most mental illnesses I will say, they are basically -- they're brain illnesses, brain disorders, they're nerve chemical illnesses. When a person gets depressed, **they have physiological symptoms.** With PTSD, **like Mr. Carver, he has physiological symptoms.** Difficulty sleeping, difficulty with concentration, difficulty with fear. **Those are physiological symptoms, which are brain and physical symptoms.**

Q.    Well, you know, I'm merely a laymen, but, I mean, **the brain is an actual physical part of the body?**

A.    **Most definitely.**

Q.    And you know, I have heard people say certain things, certain outward events cause the brain to have neurochemical reactions. And as simply as I can put it, but you know, [does] mental illness -- [have] a physical response? I mean, does it?

A.    Most definitely. It is -- the stressors in some people, not everybody, in some people will affect physiological changes such as sleep, appetite, fear, anxiety, et cetera.

Q.    **So it is fair to say** that, you know, a mental illness is really not -- **it's a physical illness as well?**

A.    **Oh, most definitely.** We're medical doctors. This isn't sort of a -- just a feeling or just a thought, this is a complex -- symptom complex of any physiological changes in the body.

(Emphasis added). In Dr. Webb's opinion, Carver's condition directly resulted from the 2004 shooting, which occurred while Carver was on duty with JPD and was "most definitely" a physical illness. Dr. Webb stated that he believed the condition was permanent. Further, Dr. Webb testified that Carver displayed physical manifestations of his PTSD. Evidence that is not "inherently improbably, incredible, or unreasonable," and not affirmatively contradicted, cannot be arbitrarily and capriciously discarded. *Morris v. Landsell's Frame*

12

*Co.*, 547 So. 2d 782, 785 (Miss. 1989). Carver presented credible evidence of his PTSD diagnosis that resulted from the 2004 shooting. There was no evidence added that contradicted the evidence Carver provided.

¶29. This is an issue of first impression for this Court. There are, however, some cases that are instructive. For example, this Court previously affirmed a circuit court's reversal of a decision of the PERS Board of Trustees (the PERS Board) for failing to consider a treating physician's notes in their entirety. *Pub. Emps.' Ret. Sys. v. Trulove*, 954 So. 2d 501, 505 (¶15) (Miss. Ct. App. 2007). In *Trulove*, this Court found that a notation by a treating physician in the medical records of the claimant satisfied her burden to establish her disability occurred while in the line of duty. *Id*. at (¶16). That note stated that "[Trulove] reports that about six days ago, she was restraining a patient and felt a pop in her neck and her symptoms down her right arm have been worse since that time." *Trulove*, 954 So. 2d at 504 (¶14).

¶30. In this case, Dr. Webb's testimony was the only evidence before the PERS Board on this issue. That testimony provided evidence that Carver sustained a physical injury as a result of the PTSD he suffered following the "traumatic event" of the 2004 shooting that occurred while he was a police officer. PERS presented no evidence that Carver's illness was not physical or not related to the shooting in 2004. Further, there was substantial testimony presented on the many other incidents over the years, which occurred after the shooting, that aggravated Carver's physical struggles because of his PTSD. The law of this State is clear that "PERS cannot choose to ignore the only evidence in the record from the

examining physician, especially where it chose not to exercise its right to an independent evaluation under [the Mississippi Code]." *Pub. Emps.' Ret. Sys. v. Dearman*, 846 So. 2d 1014, 1018 (¶11) (Miss. 2003). In fact, PERS granted Carver disability benefits under Mississippi Code Annotated section 25-11-113(1) (Rev. 2010), but still denied him duty-related disability under section 25-11-114. Section 25-11-113(1)(b) provides that "any member applying for a disability retirement allowance must provide **sufficient objective medical evidence** in support of his or her claim." (Emphasis added). The PERS Board found that Carver had provided sufficient medical evidence to qualify for disability benefits under this section. Because section 25-11-114 includes a necessary element of "physical injury," the PERS Board denied Carver's claim for duty-related disability benefits. However, the objective and uncontradicted medical evidence that Carver provided during the administrative proceedings included his diagnosis of PTSD and the physical symptoms associated with it. There was no evidence admitted that indicated otherwise.

¶31. While Mississippi has yet to recognize PTSD as a "physical injury," other states and the scientific community have. For example, in Maryland, if a worker can prove that an occupational hazard caused his PTSD, then he can collect compensation. *Means v. Baltimore County*, 689 A.2d 1238, 1243-44 (Md. App. 1997). There, the Maryland Court of Appeals noted that "a mind may be injured as well as a body. . . ." *Id*. at 1243. This is exactly what Dr. Webb testified to in front of the PERS Board. Carver's PTSD, a direct result from a traumatic incident while on the job in 2004, manifested itself in physical symptoms and continued to grow over many years to the point it prevented Carver from continuing his

duties as a police officer—not to mention that chemical and neurological changes can occur in the brain (a physical organ capable of being injured) which indicates a person has PTSD. All of these facts were presented to the PERS Disability Appeals Committee and accepted as part of the record. No evidence was offered to contradict this substantial evidence. While Carver was questioned by two physicians as part of his administrative hearing, no other doctor testified to the extent that Dr. Webb did. Additionally, no other witness refuted the evidence of the physical injury Carver presented.

¶32. Mississippi law is clear that decisions of an administrative agency, like PERS, must be undisturbed unless those decisions are "not supported by substantial evidence, [are] arbitrary and capricious, [are] beyond the scope or power granted to the agency, or violates one's constitutional rights." *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶11) (Miss. 2000). I would find that Carver proved by substantial and uncontradicted evidence through Dr. Webb's testimony that he suffered from an injury to his brain that manifested itself through physical symptoms. His PTSD manifested itself as a direct result from the 2004 shooting while Carver was in the line of duty and the many aggravating events that followed while he was still serving as a police officer with JPD.

¶33. As medical science expands its understanding of mental illness and the physical manifestations that can be produced, so too must the courts and administrative agencies in this State. The substantial and uncontradicted evidence supports a finding that Carver became disabled while in the line of duty and was the direct result of a traumatic event that resulted in a physical injury. I would find that Carver proved a physical injury under section

15

25-11-114 and, therefore, I respectfully dissent.

**CARLTON, P.J., AND McCARTY, J., JOIN THIS OPINION.**