GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Emma Henley applied for hurt-on-the-job disability benefits through the Public Employees’ Retirement System of Mississippi (“PERS”), pursuant to Mississippi Code Annotated sections 25-11-113 and 25-11-114 (Supp.2009). The Disability Appeals Committee (“Committee”) recommended that her application be denied. The PERS Board of Trustees (“Board”) adopted the Committee’s recommendation and denied Henley’s claim for benefits. Henley appealed the decision of the Board to the Hinds County Circuit Court. The circuit court affirmed the Board’s decision.
 

 
 *1109
 
 ¶ 2. Henley now argues that: (1) PERS failed to appropriately apply the definition of disability, and (2) the circuit court erred in affirming the Board’s denial of PERS disability benefits to her because the record lacked substantial evidence to support a denial of benefits and because the analysis was filled with contradictory and false statements. We find no error and affirm.
 

 FACTS
 

 ¶ 3. Henley worked for the Mississippi Department of Corrections (“MDOC”) as a Corrections Officer for more than eleven years. Prior to December 30, 2001, Henley had pre-existing medical problems. On December 30, 2001, Henley reported that she experienced major back pains after attempting to open a Sally-Port gate while at work. Henley worked the rest of her shift that day, and her pain worsened after she left work.
 

 ¶ 4. On January 5, 2002, Henley went to the emergency room. She complained of sharp pains in her lower back and left leg. Her doctor recommended that she take off from work until April 2002. She worked for six weeks and never returned to work after May. For two-and-a-half years, Henley went to several doctors for her back and leg pain.
 

 ¶ 5. On June 27, 2003, the MDOC terminated Henley’s employment. The letter of termination stated that Henley’s termination was based upon the MDOC’s findings, after the May 21, 2003, Administrative Review Hearing, that:
 

 It has been determined that you have a disability, which prohibits you from performing the job[-]related requirements and essential functions of your position. It has also been determined that there is not a reasonable accommodation which [the] MDOC could make without causing undue hardship to MDOC operations, that would allow you to perform the job-related functions of your position.
 

 ¶ 6. On July 21, 2003, Henley filed for hurt-on-the-job disability benefits with PERS. On March 29, 2004, the Board denied Henley benefits after a determination that there was insufficient evidence to support the claim that her medical condition prevented her from performing her duties as described for the position of a correctional officer.
 

 ¶ 7. Henley appealed to the Committee. A hearing was held on May 14, 2004. At the time of the hearing, Henley had settled her workers’ compensation case, and her social security case was on appeal. After reviewing the evidence, including Henley’s testimony, the Committee affirmed the Board’s decision. The Committee found that Henley had no disc herniation but only degenerative changes with a minimal disc bulge. The Committee noted that “a disc bulge is not the same thing as a ruptured disc,” but a disc bulge is caused by degeneration and not by trauma; and disc bulges cause some back pain but not radicular pain. The Committee determined that there was no persuasive evidence that Henley was disabled and that the records contained overwhelming inconsistencies in testing and symptomatology.
 

 STANDARD OF REVIEW
 

 ¶ 8. “Well-settled law in Mississippi holds that judicial review of a Board ruling is limited.”
 
 Shannon Eng’g & Const., Inc. v. Miss. Employment Sec. Comm’n,
 
 549 So.2d 446, 449 (Miss.1989). “As long as the reviewing court finds that the Board’s decision was supported by evidence and absent of fraud, it shall render the Board’s decision conclusive.”
 
 Pub. Employees’ Ret. Sys. v. Card,
 
 994 So.2d 239, 242 (¶ 14) (Miss.Ct.App.2008).
 

 ¶ 9. “An agency’s conclusions must remain undisturbed unless the agency’s order: (1) is not supported by substantial
 
 *1110
 
 evidence, (2) is arbitrary or capricious, (8) is beyond the scope or power granted to the agency, or (4) violates one’s constitutional or statutory rights.”
 
 Pub. Employees’ Ret. Sys. v. Dearman,
 
 846 So.2d 1014, 1018 (¶ 13) (Miss.2003). “There is a rebut-table presumption in favor of a PEES ruling. Neither the appellate court nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case.”
 
 Card,
 
 994 So.2d at 242 (¶ 15).
 

 ANALYSIS
 

 1. Whether the Board applied the correct definition of “disability. ”
 

 ¶ 10. Henley contends that since the MDOC terminated her employment based upon its determination that she had a disability, which prohibited her from performing the job-related requirements and essential functions of her position, then the Board must also find that she is disabled.
 

 ¶ 11. Pursuant to Mississippi Code Annotated section 25-11-113, the decision of whether a person is “disabled” is for the Board to determine. The statute does not grant authority to a potential recipient’s previous employer to make a determination of whether a claimant meets the deff-nition of disability. Accordingly, the decision of whether Henley is “disabled” was for the Board to determine and not the MDOC. Furthermore, when Henley appealed the decision to the Committee, the Committee also applied the statutory definition for “disability” as required by Mississippi Code Annotated section 25-11-113. We find that this issue is without merit.
 

 2. Whether substantial evidence exists to support the Board’s denial of disability benefits and whether the Board relied on the correct facts.
 

 ¶ 12. Next, we consider whether the record contains sufficient evidence to support the Board’s finding that Henley is not disabled. Henley argues that the Board discounted evidence.
 

 ¶ 13. Substantial evidence has been defined by the supreme court as “something more than a ‘mere scintilla’ or suspicion.”
 
 Pub. Employees’ Ret. Sys. v. Marquez,
 
 774 So.2d 421, 425 (¶ 13) (Miss.2000) (citing
 
 Miss. Real Estate Comm’n v. Anding,
 
 732 So.2d 192, 196 (¶ 13) (Miss.1999)). Substantial evidence is “that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred.”
 
 Pub. Employees’ Ret. Sys. v. Dishmon,
 
 797 So.2d 888, 892 (¶ 13) (Miss.2001). “[T]he concept of ‘substantial evidence’ supporting an agency decision has the potential to be somewhat confusing since it is, in fact, the absence of credible evidence presented on behalf of the party having the burden of proof on the issue that compels the denial of relief.”
 
 Pub. Employees’ Ret. Sys. v. Cobb,
 
 839 So.2d 605, 609 (¶ 15) (Miss.Ct.App.2003).
 

 ¶ 14. In
 
 Cobb,
 
 839 So.2d at 609 (¶ 12), this Court held:
 

 In administrative matters, the agency, and not the reviewing court, sits as finder of fact.
 
 Metal Trims Indus., Inc. v. Stovall,
 
 562 So.2d 1293, 1296 (Miss.1990). That fact-finding duty includes assessing the credibility of witnesses and determining the proper weight to give to a particular witness’s testimony.
 
 Walker Mfg. Co. v. Butler,
 
 740 So.2d 315 (¶ 46) (Miss.Ct.App.1998). A reviewing court is obligated to afford such determinations of credibility in the fact-finding process substantial deference when reviewing an administrative determination on appeal and the court exceeds its authority when it proceeds to re-evaluate the evidence and makes its own determination of the trustworthiness of
 
 *1111
 
 some particular testimony.
 
 Smith v. Jackson Const. Co.,
 
 607 So.2d 1119, 1123-24 (Miss.1992).
 

 ¶ 15. Hei’e, the Committee found that “there is no persuasive medical evidence that Ms. Henley is disabled and that the record contains overwhelming inconsistencies in testing and symptomatology.” We now consider the medical evidence before the Committee.
 

 ¶ 16. Prior to December 30, 2001, Henley suffered from pre-existing conditions which prohibited her from climbing, driving, and working more than eight hours per shift. Henley testified, and reported to the MDOC, that she injured her lower back at work while attempting to open a Sally-Port gate. After the reported incident on December 30, 2001, Henley worked the rest of her shift. On January 2, 2002, Henley went to the emergency room where Dr. Walter Moses, Jr., diagnosed Henley with lumbar radiculopathy and suspected a herniated disc.
 

 ¶ 17. On January 11, 2002, Dr. William Anderson III diagnosed Henley as having a minimal left lateral disc bulge and minimal loss of disc hydration. In his notes dated January 16, 2002, Dr. Anderson stated: “She had an MRI scan done a report of which I have received that reveals no acute changes or acute disc rupture. She does have some mild preexisting degenerative disk disease.”
 

 ¶ 18. Henley did not return to work until March 11, 2002. She was restricted to a four-hour work day and was instructed not to carry anything weighing more than ten pounds. She was also instructed not to bend, push, twist, or climb. On May 15, 2002, Dr. Anderson diagnosed Henley with a lumbar strain and began treatment with a TENS unit. Later on July 21, 2002, Dr. Anderson diagnosed her with degenerative disc disease.
 

 ¶ 19. Pursuant Dr. Anderson’s referral, Dr. Winston Capel, a neurosurgeon, evaluated Henley on June 25, 2002, and ordered an MRI. Dr. Capel interpreted the January 11, 2002, MRI as showing degeneration without collapse at the L4-5 and L5-S1 discs. Henley’s medical records show that Dr. Capel found no radicular pain upon a physical exam, but then the doctor found that Henley had a ruptured disc and radicular pain. Dr. Capel recommended anterior/posterior L4-5/L5-S1 fusion with exploration of the left nerve root.
 

 ¶ 20. On August 21, 2002, Henley then underwent an electromyography and nerve conduction study by Dr. Michael Graeber. This test was interpreted as normal with no clear nerve lesion detected.
 

 ¶ 21. On April 15, 2003, at the request of her workers’ compensation carrier, Dr. Howard Holaday performed an independent medical evaluation on Henley. He recommended against a diskectomy and fusion. Furthermore, he stated that Henley had reached maximum medical improvement and assigned her a 5% to 7% permanent impairment rating for the purposes of Henley’s workers’ compensation case. Dr. Holaday reported that Henley’s MRI showed minor degenerative changes including mild bulging of the interverte-bral disc, “no evidence of significant herniated intervertebral disc,” and no objective evidence of radiculopathy by the EMG nerve-conduction study. He recommended that Henley could return to work with no lifting greater than 20-25 pounds and no frequent stooping or bending.
 

 ¶ 22. On May 21, 2003, the MDOC held an administrative review hearing for the purpose of evaluating whether Henley had a disability, whether a disability prohibited her from performing job-related functions, and whether there was a reasonable accommodation for Henley if she did have a disability. Henley’s attorney attended the
 
 *1112
 
 hearing and stated that “it was made pretty clear off record that she, you know, her job would not be held open for her, and she would be dismissed, and based on that I advised her to file for disability.” On the same day as the MDOC hearing, Henley submitted a request for a limited-duty assignment, which was disapproved.
 

 ¶ 23. On July 21, 2003, Henley filed an application for PERS disability benefits. Henley underwent two functional-capacity evaluations, and both evaluations were unable to be completed because of Henley’s pain. One therapist stated that Henley’s pain was genuine, but noted that “she may tend to overreact to her symptoms.” Thereafter, a vocational-rehabilitation evaluation was performed on August 15, 2003, by David E. Stewart. He concluded that her range of access to occupations was severely constricted and that she “has a significant loss of wage-earning capacity.” The Committee noted that neither the functional-capacity evaluations nor the vocational-rehabilitation evaluation addressed whether objective proof existed to support a finding of disability.
 

 ¶ 24. On September 3, 2003, Dr. Anderson submitted a Statement of Examining Physician and diagnosed Henley as having a ruptured lumbar disc (severe), that her prognosis was “poor,” and that Henley had reached maximum medical improvement. On September 11, 2003, Dr. Capel submitted a Statement of Examining Physician in which he described Henley’s diagnosis as severe and said that Henley had not reached maximum medical improvement at that time.
 

 ¶25. At the Board’s request, Henley underwent an independent medical evaluation with Dr. David Collipp, who found that there were overwhelming inconsistencies with Henley’s complaints and that her participation in the examination was poor. He believed that she was attempting to deceive him, and stated that she was able to return to work without restriction. Further, Dr. Collipp noted that Henley had normal reflexes and that her ability to walk or to move was not associated with her behavior.
 

 1126. Henley had the burden of persuading PERS that she suffered a duty-related disability, and she had to show that she has an objective medical disability that resulted in an occupational disability.
 
 Cobb,
 
 839 So.2d at 609 (¶ 15). Further, she had to show that the medical condition was the result of an accident or trauma that occurred while Henley was working as a correctional officer. Miss.Code Ann. § 25-11-114(6) (Supp.2009).
 

 ¶27. Henley claims that Dr. Collipp’s “findings are contradictory to every other medical practitioner who has examined [her].” The weight of all of the medical records and testimony is a matter for the fact-finder.
 
 Pub. Employees Ret. Sys. v. Warner,
 
 983 So.2d 342, 348 (¶ 22) (Miss.Ct. App.2008). In the Committee’s analysis, it stated: “After looking at all of the evidence, it appears to this Committee that the most persuasive evidence is supported by Dr. Anderson, Dr. Holaday, and Dr. Collipp, all who refer to the MRI of January 2002, and the nerve-conductions study, conducted about the same time which did not document anything objectively wrong with Ms. Henley that would be the result of an accident on the job. The only physician that found otherwise was Dr. Capel, and even he contradicted himself when his notes are carefully read.” Also, the independent medical evaluations and other functional-capacity tests were not the only evidence on which the Committee relied. Henley testified that sitting at work for an extended period of time was very painful for her. Yet, before beginning the disability analysis, the Committee noted that “[t]his Committee certainly enjoyed meet
 
 *1113
 
 ing Ms. Henley but would like it to be reflected that Ms. Henley sat for a one-hour hearing without the least bit of observable problem, yet she complains that she is not able to work, sit or stand for long periods of time.”
 

 ¶ 28. Henley asks this Court to reverse the Board’s decision and cites
 
 Pub. Employees’ Ret. Sys. v. Dearman,
 
 846 So.2d 1014 (Miss.2003), as authority. In
 
 Dearman,
 
 the supreme court affirmed the circuit court’s finding that the Board’s decision was not supported by substantial evidence and was, therefore, arbitrary and capricious because the record was absent any evidence that the claimant was not disabled.
 
 Id.
 
 at 1019 (¶ 15). Among the uncontradicted evidence supporting a finding for disability was Elsie Dearman’s physician who had treated her for several years and determined that Dearman was permanently disabled and unable to do her job.
 
 Id.
 
 at 1016 (¶ 13). Further support offered of her disability was the certification of her superintendent and principal that Dearman was disabled and that her illness prohibited her from carrying out her job duties.
 
 Id.
 
 at (¶ 8).
 

 ¶ 29. Here, unlike in
 
 Dearman,
 
 there was evidence that contradicted a finding of disability. First, not all of the medical evidence and testimony support a finding of disability, for example: (1) Dr. Anderson’s finding in January 2002 of “mild preexisting degenerative disk disease”; (2) Dr. Graeber’s nerve-conduction study which found nothing abnormal and detected no clear nerve lesion; and (3) Dr. Holaday’s finding of minor degenerative changes. Also, Henley’s supervisor never certified that Henley was unable to perform her duties unlike in
 
 Dearman
 
 where the teacher’s principal specifically stated that Dearman’s disability rendered her incapable of performing the necessary job duties. Here, the supervisor believed that Henley was able to perform her duties, but Henley did not desire to work anymore. Accordingly, the facts in the present case differ from the facts in
 
 Dearman.
 

 ¶ 30. Henley, as the applicant, had the burden of proof to show affirmatively the existence of her disability and, thus, her right to compensation.
 
 Cobb,
 
 839 So.2d at 609 (¶ 15). Also, it was not PERS’s burden to prove that Henley could carry out her duties as a correctional officer. Accordingly, this Court finds that substantial evidence exists to support a denial of disability benefits for Henley.
 

 ¶ 31. Henley also argued that the Committee incorrectly stated that: (1) she terminated her employment on June 27, 2003; (2) her employer’s belief that she did not appear interested in her job when the employer filled out the Employer’s Certification of Job Requirements; and (3) the date she had a bulging lumbar disc.
 

 ¶ 32. The Committee stated that Henley terminated her employment when in actuality the MDOC terminated Henley’s employment on June 27, 2003. This factual error made by the Committee does not affect our decision. Whether or not Henley terminated her employment, or vice versa, substantial evidence supported a denial of disability benefits.
 

 ¶ 33. Also, Henley claims that the supervisor’s statement — that Henley was able to perform her job but did not want to work — was unfounded because the supervisor filled out the form after the MDOC terminated her employment. We find that although the supervisor filled out the form, which was sent by PERS to the employer after the fact, this is the agency’s protocol after a person applies for disability benefits. Henley did not apply for disability benefits until after her termination; thus, PERS did not have a reason to send the form prior to Henley’s termination. Henley’s allegations concerning the circum
 
 *1114
 
 stances under which her employer filled out the Employer’s Certification of Job Requirements and the exact date that Henley had a bulging disc were presented to the Board and the Committee. As such, they, as the fact-finders, had the job of weighing the information presented to them. We find that this issue has no merit.
 

 ¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J, LEE AND MYERS, P.JJ., IRVING, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.