# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-SA-00051-COA

JOHN C. SMITH                                        APPELLANT

v.

PUBLIC EMPLOYEES RETIREMENT SYSTEM          APPELLEE
OF MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2020 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | YANCY B. BURNS |
| ATTORNEY FOR APPELLEE: | AMELIA BARTLETT GAMBLE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/03/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. John Smith was a correctional officer. Smith was injured when he was attempting to restrain an inmate. He subsequently applied for duty-related disability benefits. However, the Public Employees' Retirement System of Mississippi Medical Board denied his claim. This decision was affirmed by both the PERS Disability Appeals Committee and the Hinds County Circuit Court. The circuit court's decision was not arbitrary or capricious, and it was supported by substantial evidence, therefore we affirm.

## FACTS

¶2. John Smith worked as a correctional officer at Washington County Regional

Correctional Facility in Greenville, Mississippi. He began that position on February 1, 2016. Smith's job duties included overseeing and protecting inmates from hurting each other and themselves. He stated his job required a lot of walking and standing, and he also transported inmates from one location to another at the facility. Restraining inmates was part of his regular job duties.

¶3. On March 29, 2016—just fifty-seven days after starting his job—Smith was injured while attempting to restrain an unruly inmate at the correctional facility. Smith struck his knee on the curb outside of the booking area while pulling an inmate from his cell.

### A. Smith's Post-Injury Medical History

¶4. That same day, Smith went to the doctor where he was diagnosed with a right-knee strain. He was subsequently referred to an orthopedist. About a week later, an MRI revealed a complete patellar tendon tear—the tendon had completely torn from Smith's knee.

¶5. In April 2016, Smith underwent surgery to repair the knee tear. The surgery was performed by Dr. Jason Craft. Smith then began physical therapy.

¶6. Months after his surgery, Smith returned to Dr. Craft with lower extremity pain. In his notes, Dr. Craft wondered why Smith was still experiencing so much pain. Dr. Craft ordered an MRI of the knee to evaluate the surgical repair and to check the lumbar area of his back. Smith was told to stay off work.

¶7. The second MRI revealed the knee had torn again—in medical terms, this was referred to as a postpatellar tendon reattachment with a recurrent tear. Dr. Michael Winkelmann also evaluated Smith and recommended an MRI of his back in the thoracic

2

spine area.

¶8.    Dr. Craft later diagnosed Smith with complex-regional-pain-syndrome, and he recommended a trial of parasympathetic injections.

¶9.    Afterward, Smith's employer offered him light-duty employment. Smith declined the offer. At the hearing, there was some dispute over the issue of whether Smith could return to work to perform light duties. Smith testified that the sheriff told him that he couldn't return to work because "[Smith] was 90 percent, and he needed to be at 100 percent." In contrast, Smith's employer testified he had conversations with the warden about a light-duty job in the guard shack where Smith would be stationed to admit visitors to the facility.

¶10.    Thereafter, Dr. Timothy Beacham also diagnosed Smith with complex-regional-pain-syndrome, and right-lower extremity and chronic pain syndrome. Dr. Beacham restricted Smith from standing for long periods of time, walking long distances, and lifting greater than thirty pounds. The doctor expected Smith to be at maximum medical improvement within six to twelve months. Additionally, Dr. Winkelmann diagnosed Smith with a knee injury and a thoracic injury. Impairments and restrictions were not assigned pending the performance of a functional capacity evaluation.

¶11.    Almost a year after his injury at work, Smith filed for duty-based disability benefits through PERS.

    B.    **Smith's Independent Medical Examination**

¶12.    In April 2017, Smith visited Dr. David Collipp for an IME. Dr. Collipp opined, "In my opinion, within a reasonable degree of medical probability, given his diagnosis, I have

no specific restrictions from an objective standpoint for his right knee." Dr. Collipp continued, stating that "[g]iven his exam I will defer to his objective findings. He has no present evidence of Complex Regional Pain Syndrome I or II, and his knee is grossly functionally stable. I do not opine a spine injury." Critically, Dr. Collipp further noted that "his medium duty restrictions are not duty related by PERS definition."

¶13. He also opined there was no spine injury. The doctor noted that Smith's examination was "complicated" and that he would limit Smith to medium activity and was restricted to lifting up to sixty pounds "because of his general habitus of morbid obesity"—not due to his right knee injury. Furthermore, Dr. Collipp did not assign any specific restrictions for Smith's now-healed right knee.

### C. Smith's Functional Capacity Examination

¶14. Smith then underwent a functional capacity examination to determine if he was able to complete the tasks his job required. During the FCE, Smith expressed concerns about his knee buckling. Yet he was able to perform all tasks without his right knee buckling and without losing his balance. Indeed, the examination revealed that he had a good range of motion and effective use of his right knee. Smith was able to stand, walk, crouch, and use stairs without the use of a cane and without losing balance. According to the examiner, Smith performed mostly with "max effort," and "he was able to do all activities without his cane." He also made note of the fact that "[c]lient complained of thoracic pain more than Right knee pain throughout entire FCE."

¶15. The FCE examiner noted Smith did have some health problems unrelated to his knee.

4

For instance, "forward bending and standing were limited by complaints of back pain, not knee pain." The exam showed Smith performing at a medium to heavy level. However, the examiner was unable to fully assess Smith's ability to return to work, because Smith's job description was unavailable. In the examination summary, the evaluator noted that although Smith denied chest pain or difficulties in breathing, his high heart rate during lifting warranted examination by a cardiologist. Specifically, the examiner noted that "[t]his low level lift, combined with an initial resting heart rate of 109 bmp, may be reason for client to be evaluated by his cardiologist." The doctor recorded Smith's height at 5 feet 9 inches and his weight at 307 pounds during the exam.

### D.     Smith Reaches Maximum Medical Improvement

¶16.    Smith eventually reached maximum medical improvement from his work-related injuries and attempted to return to work. Dr. Winkelmann reviewed the FCE and issued Smith a return to work slip. In his notes, Dr. Winkelmann stated that "[a]ccording to the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition, as a result of his injury, he has a 5% partial permanent impairment to the lower extremity with a sensory impairment of 2% lower extremity to a 7% lower extremity."

### PROCEDURAL HISTORY

¶17.    As a result of his medical records, the testimony heard at the hearing, the IME, and the FCE, the PERS Medical Board denied Smith duty-related disability benefits. Smith filed his notice of appeal to the Disability Appeals Committee. The Committee provided its recommendation to the PERS Board of Trustees, proposing Smith's claim for duty-related

disability benefits be denied. The Committee found insufficient objective medical evidence that Smith was unable to perform his usual duties as a correctional officer. The Board agreed with the Committee and adopted those findings on the same day.

¶18. Notably, in its "Proposed Statement of Facts, Conclusions of Law, and Recommendation to the Board of Trustees," the Committee noted in Smith's FCE that Smith could function at a level "adequate to perform his usual duties as a correctional officer," and that "[t]he limitations referred to in the FCE are related to obesity and coronary-related questions, neither of which are the direct result of the injury sustained from the accident[.]" Further, the Committee stated that "[d]isability resulting from cardiovascular, pulmonary, and musculoskeletal conditions, not a direct result of a physical injury sustained from an accident in the performance of duty, are deemed ordinary disabilities by law."

¶19. The Committee acknowledged that Dr. Beacham diagnosed Smith with complex-regional-pain-syndrome of the right-lower extremity and chronic pain syndrome. However, they also noted Dr. Collipp's opinion showing no basis for a diagnosis of complex regional pain syndrome. The Committee stated, "[I]n any event, a large percentage of patients resolve chronic regional pain syndrome within eighteen months. It would be unusual for the condition to be permanent." And "Mr. Smith's back and lower extremity pain is subjective and does not significantly limit his functional abilities. Any limitations he may have directly related to this injury are not likely to be permanently disabling."

¶20. Ultimately, the Committee found Smith's knee injury did not render him permanently physically or mentally incapacitated from performing the usual duties of his employment as

a correctional officer.

¶21. Smith subsequently filed his appeal of the agency's decision to the Circuit Court of Hinds County. The Circuit Court affirmed the denial of disability benefits. Smith now appeals to this Court.[1]

## STANDARD OF REVIEW

¶22. "Well-settled law in Mississippi holds that judicial review of a Board ruling is limited." *Henley v. Pub. Emps.' Ret. Sys. of Miss.*, 26 So. 3d 1108, 1109 (¶8) (Miss. Ct. App. 2010) (internal quotation marks omitted). "As long as the reviewing court finds that the Board's decision was supported by evidence and absent of fraud, it shall render the Board's decision conclusive." *Id*. (internal quotation marks omitted).

¶23. "The standard of review on appeal from an administrative decision of the PERS Board of Trustees is limited to a determination of whether the PERS Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the authority of the Board to make; or (4) violated a statutory or constitutional right of the claimant." *Richardson v. Pub. Emps.' Ret. Sys. of Miss.*, 290 So. 3d 1265, 1269 (¶6) (Miss.

---

[1] Smith also sought benefits for the same injury in a Workers' Compensation Commission case. *See Washington Cnty. Bd. of Supervisors v. Smith*, 2019-WC-01193-COA, 2020 WL 5525526 (Miss. Ct. App. Sept. 15, 2020). In that case, we affirmed in part, finding substantial evidence supported the Commission's finding that Smith sustained a 100% loss of industrial use of his right leg and the Commission did not err in affirming the AJ's separate order regarding the spinal cord stimulator. *Id*. at *1 (¶3). We further reversed and rendered the finding of a compensable mental injury. *Id*. Following this Court's opinion, the parties settled, and the county's motion for rehearing was dismissed. An "Order Approving Lump Sum Settlement" was subsequently entered by the Commission. *See also Anthony v. Marion*, 90 So. 3d 682, 688 (¶20) (Miss. Ct. App. 2012) (finding that "PERS law is separate and distinct from workers' compensation law").

Ct. App. 2019) (citing *Thomas v. Pub. Emps.' Ret. Sys. of Miss.*, 995 So. 2d 115, 118 (¶14) (Miss. 2008)). "If the agency's decision is supported by substantial evidence, then the agency's decision stands." *Ulrich v. Pub. Emps.' Ret. Sys.*, 281 So. 3d 259, 262 (¶10) (Miss. Ct. App. 2019).

¶24. "Substantial evidence has been defined by the supreme court as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Id*. at (¶11). "Substantial evidence requires 'something more than a mere scintilla or suspicion.'" *Pub. Emps.' Ret. Sys. v. Worlow*, 172 So. 3d 745, 747 (¶13) (Miss. Ct. App. 2011) (internal quotation marks omitted) (quoting *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶13) (Miss. 2000)). "Substantial evidence has further been defined by this Court as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Marquez*, 774 So. 2d at 425 (¶13). "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." *Worlow*, 172 So. 3d at 747 (¶13) (internal quotation marks omitted).

¶25. "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Richardson*, 290 So. 3d at 1271 (¶12) (internal quotation marks omitted). And "[a]n action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id*. (internal quotation marks omitted).

¶26. "There is a rebuttable presumption in favor of a PERS ruling." *Id*. at 1270 (¶7) (citing

8

*Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶15) (Miss. Ct. App. 2008)). "Neither the appellate court nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case." *Id*. So, "even if we would have reached a different conclusion had we been sitting as the finder of fact, we may not reweigh the evidence and substitute our own opinion for that of the PERS Board." *Id*.

**ANALYSIS**

¶27.    The sole issue Smith raises on appeal is whether the agency's decision to deny him duty-related disability benefits is "clearly erroneous, contrary to law and not supported by substantial evidence" as defined by Mississippi Code Annotated section 25-11-113(1)(a) (Rev. 2018).  Smith asserts that the PERS decision to deny his request for duty-related disability benefits was arbitrary and capricious.  Smith maintains that the Committee's recommendation and the Board's finding that his "diminished functional capacity is a consequence of morbid obesity, not the traumatic injury, is not supported by substantial evidence." He also argues PERS relied too heavily on Dr. Collipp's opinion that obesity was the cause of Smith's diminished functional capacity.

¶28.    The question before the PERS Medical Board, the Committee, and the Board of Trustees was whether Smith met the statutory requirements to receive duty-related disability benefits.  For a claimant to be entitled to receive PERS disability retirement benefits, they must first prove that they are disabled.  Miss. Code Ann. § 25-11-113(1)(a).  Any member seeking disability benefits must prove to the medical board that they are "mentally or

9

physically incapacitated for the further performance of duty, that the incapacity is likely to be *permanent*, and that the member should be retired." *See* Miss. Code Ann. § 25-11-113(1)(a) (emphasis added).[2] "Along with the requirements under section 25-11-113, an individual who applies specifically for duty related disability benefits must prove that they were disabled as a 'direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of a duty.'" *Ulrich v. Pub. Emps.' Ret. Syst.*, 281 So. 3d 259, 262 (¶13) (Miss. Ct. App. 2019) (quoting Miss. Code Ann. § 25-11-114 (Supp. 2015)). "Disability is defined as the 'inability to perform the usual duties of employment.'" *Id.*[3]

¶29.    So "in order to approve a claim for disability benefits, PERS must find sufficient medical evidence of a physical or mental condition that is likely to be permanent and that renders the applicant incapable of performing his or her job or another job offered by the employer within the same geographic area and with no material reduction in pay."

---

[2] Smith is only eligible for duty-related benefits because he is an unvested member of PERS, as he had only worked fifty-seven days before his injury occurred. *See* Miss. Code Ann. § 25-11-113(1)(a). "A member can claim disability benefits from PERS in two scenarios, either of which, if proven, entitle the member to disability benefits." *Ulrich v. Pub. Emps.' Ret. Sys.*, 281 So. 3d 259, 262 (¶12) (Miss. Ct. App. 2019); *see also* Miss. Code Ann. § 25-11-113. "The first is for members who are vested and become disabled for any reason." *Ulrich*, 281 So. 3d at 262 (¶12). "The second is duty related disability benefits for any members, no matter how many years of credible service, that are injured in conjunction with their employment duty." *Id.*

[3] The medical board defines disability as "[t]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System . . . that is actually offered and is within the same general territorial work area, without material reduction in compensation." Miss. Code Ann. § 25-11-113(1)(a).

10

*Richardson v. Pub. Emps.' Ret. Sys. of Miss.*, 290 So. 3d 1265, 1271 (¶11) (Miss. Ct. App. 2019); *see* Miss. Code Ann. § 25-11-113(1)(a).

¶30. "The applicant for disability benefits carries the initial burden of proving to PERS, through objective medical evidence, that she is disabled." *Worlow*, 172 So. 3d at 747 (¶14).[4]

¶31. "The question before this Court is not whether there is evidence to support a finding that [Smith] is disabled, but rather whether there is evidence in the record to support the PERS Board's decision to deny disability benefits." *Richardson*, 290 So. 3d at 1271 (¶12).

¶32. Here, Smith applied for duty-related disability benefits. Critically, the IME doctor stated, "[I]n my opinion, within a reasonable degree of medical probability, given his diagnosis, I have no specific restrictions from an objective standpoint for his right knee." The doctor further stated, "[H]is knee is grossly functionally stable. I do not opine a spine injury." The FCE noted Smith complained about more back pain than right-knee pain throughout the entire evaluation.

¶33. Accordingly, the Committee found that there was "insufficient objective medical evidence that Mr. Smith is unable to perform his usual duties as a Correctional Officer for the Washington County Regional Correctional Facility as a result of the accident[.]" Further,

---

[4] "'Objective medical evidence' means reports of examinations or treatments; medical signs that are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals; psychiatric signs that are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings that are anatomical, physiological, or psychological phenomena that are shown by medically acceptable laboratory diagnostic techniques, including, but not limited to, chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests." Miss. Code Ann. § 25-11-113(1)(b).

"[a]ny limitations he may have directly related to this injury are not likely to be permanently disabling." The Committee noted the FCE revealed he had good range of motion and effective use of his right knee. The Committee also reiterated the findings of the IME, which concluded there was no evidence of chronic pain and no spine injury, and no specific restrictions were assigned for the right knee and Smith's right knee was "grossly, functionally stable." According to the FCE, Smith "can function at a level adequate to perform his usual duties as a correctional officer." Critically, the Committee stated that the limitations referred to in the functional capacity examination were related to obesity and were coronary-related questions, "neither of which are the direct result of the injury sustained from the accident on March 29, 2016."

¶34. Smith argues that the Committee lacked substantial evidence to deny his claim since "[n]ot one physician correlated any morbid conditions with Smith's post injury residual functional capacity as measured by the FCE." He also argues that "PERS fused the FCE findings with the premature opinions of Dr. Collipp to arrive at a medical-legal finding that Smith's disability is attributable to morbid obesity." Yet Smith's arguments ignore both Dr. Collipp's and the FCE examiner's findings that the right knee was "grossly, functionally stable" and the fact that Smith was able to perform all activities without his cane. Further, what pain he was experiencing was attributed to his back and not his right knee. In sum, Smith's right knee had substantially healed from the injury he suffered at work in March 2016.

¶35. While two physicians may have diagnosed Smith with complex-regional-pain-

syndrome, neither came to the conclusion that he was in fact permanently disabled for purposes of Mississippi Code Annotated section 25-11-113(1)(a).  To the contrary, both the IME and the FCE determined he was not permanently disabled as a result of the work injury.

¶36.    In fact, the doctor who performed the IME opined  Smith was only *limited* to medium activity and only able to lift up to sixty pounds "because of his general habitus of morbid obesity."  Additionally, the doctor found no present evidence of chronic pain and was of the opinion there was no spine injury.  Dr. Collipp also concluded Smith's right knee was "grossly, functionally stable."  Crucially, the physician opined Smith's medium duty restrictions were not "duty related" by PERS' definition.

¶37.    Furthermore, the FCE demonstrated Smith was able to stand, walk, crouch, and take stairs without the use of a cane and without losing his balance.  The examination went on to note that "forward bending and standing were limited by complaints of back pain, not knee pain."  The limitations referred to were related to obesity and coronary-related questions.  And the evaluator noted Smith performing at a medium to heavy level and he would be able to return to work under the functional capacity examination restrictions.  Smith presented no contrary evidence to the findings of the FCE and IME.

¶38.    "Mississippi law mandates that where there is 'more than a scintilla' of evidence to support a Board's decision, this Court is bound to affirm."  *Ulrich*, 281 So. 3d at 263 (¶18).  Our review of the record demonstrates there was sufficient evidence for PERS to deny Smith duty-related disability benefits.   Both the IME and FCE determine Smith was not permanently disabled.  As a result, we affirm the denial of duty-related disability benefits and

13

uphold the decision of the Hinds County Circuit Court.

¶39.    **AFFIRMED.**

      **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**